### Brown *vs.* Dewey.

B. was indebted to D. in the sum of $1100, to secure the payment of which he had given D. a mortgage upon his farm. He was also indebted to D. in other sums, amounting, together with the mortgage money, to $1850. He then conveyed the mortgaged premises to D. by deed, in fee, with warranty, for the consideration of $2500; and D. thereupon executed a sealed agreement with B., reciting the mortgage, the payment of more money since, to the amount of $2500, and the giving of the deed, and declaring that D. bound himself to give to B. a warranty deed of the farm, provided B. performed the conditions of the agreement. D. then

Brown *v.* Dewey.

bound himself to rent the farm to B. for five years, for the amount of the interest on the $2500, and B. agreed to make improvements to the amount of $50 per annum for the five years.   D. bound himself to sell the farm to B. at the end of the five years, for $2800, with a reasonable time to pay the amount; and to give to B. the privilege of selling the farm at any time, and when D. had received the whole amount he was to give a deed.   The agreement then stated that B. had deposited with D. a note for $200, on interest, signed by B. and a surety, payable to D., as security that if D. realized the $2800 from the farm, at the end of the five years, then the note was to be of no effect; otherwise in full force. The mortgage and other obligations of B., except the $200 note, were thereupon given up by D.   Upon a bill filed by B. against D. to have the deed declared to be a security for a loan, and praying that it might be given up, and cancelled, on the ground of usury; *Held* that the transaction was to be regarded as a sale of the premises embraced in the deed, with an agreement to re-sell, and not as a mortgage; and the bill was dismissed.

Circumstances to be taken into consideration in determining whether a transaction was a mortgage, or a conditional sale.

Where it appears, either from the instruments executed by the parties, or by parol evidence, that the transaction was originally intended as a security for money, no form of words used by the parties, in executing their intent, will be allowed, in a court of equity, to defeat their object.   *Per* HARRIS, J.

Before giving to a transaction of a doubtful character a construction which will have the effect to create a forfeiture of the security, a court of equity ought to be well satisfied that such a construction does no violence to the intention of the parties themselves.   *Per* HARRIS, J.

In doubtful cases, the court leans in favor of the right of redemption, and not in favor of the right to have the security avoided on the ground of usury.   *Per* HARRIS, J.

In determining whether a transaction doubtful in its character is to be regarded as a mortgage, or a conditional sale, neither adequacy of price nor the want of an obligation to repay the money, nor even both circumstances combined, are to be held as *conclusive* tests.   But they are important circumstances, in deciding the question.

IN EQUITY.   This was an appeal from a decree of the assistant vice chancellor of the first circuit.   On the 27th day of January, 1840, the plaintiff executed to the defendant a deed for a farm in the county of Schoharie; and at the same time an agreement was executed between the parties as follows: " Article of agreement made the twenty-seventh day of January, 1840, between Elias Dewey of the town of Jefferson and county of Schoharie and state of New-York, of the first part, and Elisha Brown of the town of Summit, and the same county and state, of the second part.   Whereas the party of the first

Brown v. Dewey.

part has assisted the party of the second part to money, and taken a mortgage for the same upon the farm that the said Brown bought of William Willsie in the year 1836, and the party of the first part then took a mortgage from the second party of eleven hundred, and the first party has paid the second party more money since, in all up to the present date to the amount of twenty-five hundred dollars, and the party of the second part has for the sum of $2500, given a warrantee deed to the first party, and the condition of this article is such that the party of the first part doth bind himself, his heirs, executors and assigns, to give to the party of the second part a warrantee deed, free and clear from all incumbrances, providing the second party doth perform certain conditions hereinafter mentioned. The party of the first part doth bind himself and his heirs, executors and assigns, to rent to the second party, to his heirs and assigns, the said farm for the amount of the interest on the $2500, and the second party doth agree to put on betterments to the amount of $50 a year for the term of five years, which the first party agrees to rent the farm to the second party, to commence the first of December, 1839, and at the expiration of the five years the first party binds himself, his heirs and assigns, to sell the said farm to the second party or his heirs or assigns, for the sum of two thousand eight hundred dollars, with a reasonable time to pay the amount. The first party binds himself, his heirs, executors and assigns, to give the second party, his heirs or assigns, the privilege of selling the farm at any time, providing the first party receives a portion of the amount down with a reasonable time to pay the remainder. Then when the party of the first part has received the full amount, the party of the first part is to give a warrantee deed of the said farm. The second party has deposited a note in the hands of the first party for security, that is, if the first party doth realize the amount of two thousand eight hundred dollars for the farm at the expiration of the five years, then the note to be of no effect, otherwise in full force. The said Elias Dewey is to receive the annual interest on the money that remains unpaid after he sells the farm. The two

Brown v. Dewey.

hundred dollar note that is left in the hands of the first party for security, is given by the second party and signed by his brother Parlie Brown.

Signed in presence of            ELIAS DEWEY,
    Caroline Brown.             ELISHA BROWN."

The securities held by the defendant at the time the papers were executed were cancelled, and the defendant paid the plaintiff the balance of the purchase money. The value of the farm at the time of the transaction was about $2500. The bill was filed to have the deed declared to be a security for a loan, and to have it given up and cancelled on the ground of usury. The answer, which was upon oath, denied all the charges of usury, and insisted that the defendant became the absolute purchaser of the farm, with an agreement to re-sell. The cause was heard upon pleadings and proofs before the assistant vice chancellor of the first circuit, sitting for the vice chancellor of the third circuit; who made a decree declaring that the deed of the 27th of January, 1840, was a security merely, and that the transaction was usurious. From this decree the defendant appealed. For a further statement of the case, and the opinion of the assistant vice chancellor, see 1 *Sandford's Ch. Rep.* 56.

*A. Parker*, for the appellant.

*A. Becker*, for the respondent.

HARRIS, J. The real question in this case is whether the parties intended the deed of the 27th of January, 1840, as a security for money, or a sale. In form, the conveyance is absolute, with an agreement to re-convey upon certain conditions. But if it appears either from the instrument executed by the parties, or by parol evidence, that the transaction was originally intended as a security for money, no form of words used by the parties in executing their intent will be allowed, in a court of equity, to defeat their object. Although a great number of witnesses have been examined in this cause, there is nothing

in their testimony from which much aid can be derived in determining what was the real intention of the parties when the conveyance in question was executed; except so far as it relates to the value of the farm conveyed. Judging then from the papers themselves, was this a sale of the farm with an agreement to re-sell at a future day at an advanced price, or was it a security partly for a pre-existing debt and partly for a loan then made, to be paid at a future day, with an advance exceeding the legal rate of interest?

The parties were capable of acting for themselves, and if they really intended to make a contract for the sale of the farm defeasible by the payment of money at a future day, they certainly had a right to do so. To deny to two individuals the power to make such a contract, would be, in the language of Chief Justice Marshall, "to transfer to the court of chancery the guardianship of adults as well as infants." On the other hand, the policy of the law prohibits the conversion of what was really a mortgage into an absolute sale, whatever its form. "As lenders of money," says the same learned jurist, "are less under the pressure of circumstances which control the perfect and free exercise of the judgment than borrowers, the effort is frequently made by persons of this description to avail themselves of the advantage of this superiority, in order to obtain inequitable advantages. For this reason, the leaning of courts has been against them; and doubtful cases have been generally decided to be mortgages."

Although it is true that courts of equity lean strongly in favor of the right of redemption, and for this reason, in doubtful cases, contracts of this description have frequently been construed as mortgages, rather than conditional sales; yet when the aid of the court is sought, not to establish a right of redemption, but to have a conveyance declared a mortgage, for the purpose of avoiding it on the ground of usury, the reason why in doubtful cases the court should incline to hold the conveyance to be a mortgage, seems to fail. On the contrary, it seems to me, that before giving to a transaction a construction which should have the effect to create a forfeiture of the secu-

rity, a court of equity ought to be well satisfied that such con-
struction does no violence to the intention of the parties them-
selves. It is the right of redemption in favor of which the
court leans, in doubtful cases, and not the right to have the
security avoided on the ground of usury. Accordingly, it will
be found that all the cases cited by the counsel for the plaintiff,
upon the argument, and all the cases referred to by the as-
sistant vice chancellor in his very able and learned opinion, in
which conveyances absolute upon their face have been held to
be mortgages, have been so held upon bills filed to redeem. It
is admitted that if it is established to the satisfaction of the
court that the transaction was intended by the parties as a
security, it is bound to give effect to that intention, though the
consequence may be to render the contract usurious and void.
But before a party is to be visited with such a penalty, I think
he is entitled to have it established by clear and affirmative
proof that he intended to make such a contract.

What then is the nature of the transaction of the 27th of
January, 1840 ? Chancellor Walworth has laid it down as a
general rule, in determining whether a conveyance was intended
by the parties as a mortgage or as a conditional sale, that where
the contract and conveyance are made upon an application for
the loan of money, the court, for the purpose of preventing usury
and extortion, will construe it to be a mortgage whenever the
person to whom the application is made agrees to receive back
the money advanced, with legal interest, or a larger sum, and
to re-convey the property, within a specified time, whatever the
form of the written contract, *if it is apparent that the real
transaction was a loan of money.* And in such case the rela-
tive value of the property and the price actually paid, are to be
taken into consideration in determining the intent of the
parties. (*Robinson* v. *Cropsey,* 6 *Paige,* 480. *Holmes* v.
*Grant,* 8 *Id.* 257.) If there is gross inadequacy of price, it is
always a strong circumstance to show that the parties did not
intend a sale. On the contrary, if the consideration paid is
equal to the fair value of the property conveyed, it is an equally
strong circumstance in favor of construing the contract as a

conditional sale, and not a mortgage. So also, where the grantor, by virtue of the contract for a re-sale, has the privilege merely of re-purchasing the property upon the terms stipulated, without any obligation on his part to comply with such terms, it has, in some cases, been held to be conclusive evidence that a conditional sale was intended; while, on the other hand, the fact of there being a right of the grantee to recover the money which he had stipulated to receive as the condition of a re-conveyance, thus making the obligation between the parties mutual and reciprocal, has, sometimes, been held to be sufficient ground for treating the transaction as a mortgage. I do not say that either of these circumstances is to be regarded as a decisive test, upon the question whether a transaction, doubtful in its character, is to be regarded as a mortgage or a conditional sale. On the contrary, I admit that neither adequacy of price nor the want of an obligation to re-pay the money, nor even both circumstances combined, are to be held as *conclusive* evidence that a conditional sale and not a mortgage was intended. Both, however, are important circumstances in determining the question; and where a grantor has received the full value of his property and has incurred no personal liability upon the contract for a re-sale, there should be clear and strong evidence that the parties intended the transaction merely as a mortgage, to justify the interference of a court of equity; especially when the result of such interference is to visit one of the parties with the penal consequences which follow the violation of the statute against usury. Is there, then, in this case, evidence that will justify a construction which overrules the terms of the contract between the parties, as they have thought fit themselves to express it, and at the same time overcome the strong presumption arising, as well from adequacy of consideration, as the absence of all personal liability of the grantor? The learned assistant vice chancellor, himself, admits that the absence of a personal liability of the plaintiff for the payment of the $2500, in connection with the adequacy of the consideration, would be controlling with him, were it not for *certain other strongly marked features in the case.*

Brown *v.* Dewey.

Two of these features are referred to. One is the reservation as rent, of the interest of the $2500 during the period for which the plaintiff was to have the refusal of the farm, together with a stipulation to expend upon the farm in permanent improvements, annually, the further sum of $50; thus making an annual rent of $225, to be paid by the plaintiff during the five years he was to occupy the farm; when the annual rent of the farm, as the assistant vice chancellor thinks, was in fact worth but about the sum of $115. The other, the fact that the defendant retained the $200 note, to be paid with interest, in case at the end of five years the plaintiff should not elect to take a re-conveyance of the farm at the price of $2800. I cannot concur with the assistant vice chancellor in regarding these circumstances as sufficient "fully to rebut the inference arising from the adequacy of the price, as well as the want of personal liability." On the contrary, I regard them as entirely consistent with the supposition that the parties intended the transaction as a conditional sale. Suppose there had been no previous dealings between the parties, and at the time the agreement of the 27th of January was executed, the defendant had been the owner of the farm by purchase from any other person. An agreement is executed whereby the plaintiff is allowed the refusal of the farm for five years at a stipulated price, without, on his part, binding himself to make the purchase. Would it not be perfectly fair for the plaintiff to agree, during the period for which he was to have the refusal of the farm, to pay a sum which should be equal to the interest of the estimated value of the farm, and also to be at the expense of such repairs as were necessary to prevent the farm from depreciating in value by dilapidation? Would it be regarded as any thing more than a fair equivalent for the privilege granted of electing whether he would purchase or not? The owner places it beyond his power to make a sale, however advantageous; and as a consideration for such an agreement, the party who contracts for the right to purchase agrees to keep the farm in repair and to pay, until the time for making his election expires, a rent which shall be equal to the interest on the value

of the farm.    If there had been no pre-existing debt—if when
the conveyance of the 27th of January was executed the defen-
dant had paid the consideration in cash, instead of discharging
the securities he held—these "strongly marked features" would,
I apprehend, have been scarcely sufficient to raise a doubt as
to the real nature of the transaction.    With the exception of
the fact that a part of the consideration was paid by surrender-
ing securities already held by the defendant, this case is not
distinguishable from that of *Glover* v. *Payn*, (19 *Wend.* 518.)
In that case Delavan, in consideration of $7000, received the
conveyance and at the same time executed an agreement
whereby he covenanted to re-convey at a certain time in case
the grantor should elect to pay him $8000, and in the meantime
the grantor was to pay rent at the rate of $500 per annum,
and keep the premises in repair and insured and pay all taxes
and assessments.    Judge Bronson, in delivering the opinion of
the court, says : " It is impossible to say that an agreement to
re-sell will change 'an absolute conveyance into a mortgage."
Should, then, the fact that a part of the consideration for the
farm was paid by surrendering securities which the grantee
held against the grantor have an effect so decisive and con-
trolling as to overcome all the other circumstances in the case
tending to show that the transaction was in fact a sale, with
an agreement to re-sell, and change what would otherwise
have been an absolute sale, with an agreement for a re-
conveyance, into a mere mortgage ?    The price paid was the
full value of the property.    The risk of loss which might be
sustained by a depreciation in the value of the property was
to be run by the defendant.    All liability of the plaintiff was
discharged.    He was to have the benefit of any enhanced
value of the farm for five years, upon terms fair and equitable.
Under such circumstances, to convert the conveyance into a
mortgage for the purpose of avoiding it as usurious, would, it
seems to me, be extremely inequitable.    It is with unaffected
diffidence, that I venture to dissent so entirely from the con-
clusions of the very able and learned jurist whose opinion I
have been reviewing.    But I feel constrained to say that, in

every view I have been able to take of the case, I think the decree erroneous; and it must therefore be reversed, and a decree entered dismissing the plaintiff's bill with costs.

---

GREENE GENERAL TERM, October, 1847.　*Harris, Watson, and Parker*, Justices.