THOMAS SAXTON *vs.* ZELAM HITCHCOCK and others.

To constitute a deed, absolute on its face, a mortgage, it must be made to appear, from the instrument itself or otherwise, that the transaction was originally intended as a security for money—that it was in fact a mere loan of money.

If there be a sale, with an agreement to repurchase within a given time, then it is not a mortgage, but a conditional sale.

Such conditional sales are valid, and the time limited for the repurchase must be precisely observed, or the vendor's right to a reconveyance of the property will be lost.

In disposing of cases involving the question whether a transaction is a mortgage, or a conditional sale, courts will look at the facts to determine what the parties actually intended.

Z., being the owner in fee of certain premises, conveyed the same, on the 17th of April, 1855, by a deed absolute on its face, to D. This deed was accompanied by an agreement in writing, between the parties, by which D. authorized and empowered Z. to contract for and sell the premises and apply the purchase money as therein directed, or to mortgage the same to raise money for the same purpose, and agreed that upon the performance of certain conditions on or before the 1st day of April, 1856, he would reconvey the premises to Z. or to the person to whom Z. might have contracted to sell the same. And it was agreed that in case Z. should fail to comply with the condition, the title of D. should become absolute. *Held* that the deed and agreement, taken together, constituted a defeasible purchase, or *conditional sale*, which became absolute on the 1st of April, 1856, upon Z.'s failure to comply with the conditions, and thereupon vested the title of the premises in D. in fee, who had a perfect right, thereafter, to execute a mortgage upon the property.

Saxton *v.* Hitchcock.

A PPEAL from a judgment entered upon a referee's report. The action was brought for the purpose of foreclosing a mortgage given by Daniel I. Hitchcock, one of the defendants, to the plaintiff, for $662.20 ; also a mortgage executed by said Daniel I. Hitchcock to the plaintiff, conditioned to indemnify him as security upon two notes given by the said Daniel I. Hitchcock. The mortgaged lands originally belonged to the defendant Zelam Hitchcock, the appellant, who was the only defendant who appeared in the action. In his answer he set up that Daniel I. Hitchcock, at the time he gave the mortgages to the plaintiff, was not the absolute owner of the premises described therein, and had no title thereto, except as a mortgagee in trust, &c. and had no power to make the mortgages mentioned in the complaint. That the defendant Zelam Hitchcock was owner in fee of said premises, and only conveyed them to Daniel I. Hitchcock, in April, 1855, by way of mortgage or in trust, to secure certain debts, retaining in himself the equity of redemption and the right of defeasance of the said conveyance to the said Daniel, and insisted that the mortgages were void.

The cause was referred to a referee. It appeared upon the trial that the mortgages were both dated April 27, 1858. That on the 17th day of April, 1855, Zelam Hitchcock and wife conveyed by deed to Daniel I. Hitchcock, a portion of the mortgaged premises, being four parcels of land, making two hundred and twelve acres. Prior to this, and on the 4th of February, 1850, one Daniel Hitchcock conveyed to Daniel I. Hitchcock, seventy-seven acres of land. The mortgages covered two farms, except one hundred and five acres conveyed to one Stanton, by Daniel I. Hitchcock, and except about four acres conveyed to one Colburn, by Zelam Hitchcock.

On the 20th day of April, 1855, Daniel I. Hitchcock and Zelam Hitchcock made and entered into the following agreement, relative to the premises so conveyed by the latter to the former, viz :

"Memorandum of an agreement made this twentieth day

of April, in the year of our Lord one thousand eight hundred and fifty-five, between Daniel I. Hitchcock, of the town of Westerlo, county of Albany, and state of New York, of the first part, and Zelam Hitchcock of the second part, witnesseth, that the party of the first part hereby irrevocably authorizes and empowers the said party of the second part, from this time until the first day of April next, to contract for the sale and conveyance of the several lots or parcels of land particularly described in a certain deed executed by the said Zelam Hitchcock and wife to the said Daniel I. Hitchcock, bearing date the 18th day of April, 1855. Such contract shall be in the name of the party of the second part, and with some person or persons of sufficient pecuniary responsibitity, and for a sum of money or consideration not less than the aggregate sum made up of the following items, viz: First. The amount now due upon a mortgage held by the executors of Daniel Millar, deceased, for principal, interest and the costs in the proceedings for the foreclosure thereof, which mortgage embraces the land in question and another farm owned by the party of the first part. Second. A mortgage held by Charles L. Mulford. Third. The amount due upon a mortgage held by Jeremiah Lockwood. Fourth. Amount due upon a judgment in favor of George Reed and Alexander Reed, which mortgages and judgment are a lien upon the land conveyed by the deed from Zelam Hitchcock and wife to the said Daniel I. Hitchcock. Fifth. The balance due upon five hundred dollars advanced by Daniel I. Hitchcock to Zelam Hitchcock, mentioned in an agreement dated January 11, 1854.

And the said party of the first part also hereby authorizes the said party of the second part, (in case said party of the second part shall not contract for the sale of the said land as above provided,) to contract for mortgaging the said land, or for giving any other lien thereon, to raise the aggregate sum of money made up of the following items, viz: The amount of the said mortgage held by the executors of Daniel Millar,

including the costs of the proceedings for the foreclosure thereof; the amount which the said party of the first part shall have paid upon the incumbrances on said land, and the balance that may be unpaid upon the five hundred dollars advanced by the party of the first part to the party of the second part, as hereinbefore stated.

And the party of the second part hereby agrees to use all reasonable means to effect a sale of the said land, or to make a contract for mortgaging the said land, for a sum not less than that hereinbefore stated.

And the party of the first part hereby agrees that, in the event the said party of the second part shall contract for mortgaging or for the sale of the said land as herein provided, or in such manner that the mortgage held by the executors of Daniel Millar, deceased, together with the amount the said party of the first part shall have paid thereon, including costs and whatever the said party of the first part shall have paid upon the incumbrances on said land, including the balance unpaid of the said five hundred dollars, shall be paid, then and in such case the said party of the first part, upon the payment to him of the money which he shall at that time have paid, as last above mentioned, including the amount paid upon the mortgage of said executors, for principal, interest and costs, and the amount remaining unpaid thereon, shall execute and deliver a deed conveying the said land to the said Zelam Hitchcock, or the person or persons to whom the said Zelam Hitchcock may have contracted to convey the same; the arrangement for mortgaging said land, as well as selling the same, is to be made and finally consummated on or before the first day of April, 1856.

The party of the first part agrees to pay the party of the second part for negotiating a sale of said land, whatever the same shall be sold for, over and above paying the amount herein provided, and if he should make arrangement for mortgaging the land, his compensation shall be the amount the land may be worth over the amount of the incumbrances.

If the party of the first part shall be required to convey said land according to the provisions of this agreement, either to consummate a sale thereof, or for the purpose of enabling the party of the second part to raise the requisite sum by mortgage, such deed of conveyance shall be by quit-claim deed with a covenant against any incumbrance upon such land, occasioned or suffered by or through him.

In witness whereof, the parties have set their hands and seals, the day and year first above written.

It is also agreed, that in case a sale should be made of said land, the same is not to be made to take effect until after the first of December next, reserving the privilege of the buildings and yards for keeping stock and the produce until the first of April next."

The agreement refers to a certain five hundred dollars, which had been advanced by Daniel I. to Zelam Hitchcock, under a prior agreement, dated January 11, 1854. This last agreement, which was introduced in evidence, was made in consideration of the conveyance of three pieces of land by Zelam to Daniel I. Hitchcock, which were to be reconveyed if the conditions were fulfilled by the first day of April, 1854, and if not, then the title of Daniel I. Hitchcock to the premises was to become absolute. No deed was proven to have been executed in connection with this last agreement. The defendant claimed that the deed to Daniel I. Hitchcock was intended as a mortgage to secure the sum of five hundred dollars advanced by said Daniel; that he had paid four hundred dollars towards the said advancement; and that he had not paid the remainder, because Daniel I. Hitchcock refused to state the balance, or to account with him. It also appeared that the appellant was in the actual possession of twelve or fourteen acres of the mortgaged premises. Some evidence was introduced to prove that the plaintiff had notice of the instrument of April 20, 1855, but this fact was denied by the plaintiff.

The referee found in favor of the plaintiff for the amount

due upon the mortgages, and as a conclusion of law, that the deed of the mortgaged premises and the extemporaneous agreement, taken together, constituted a defeasable purchase or conditional sale, which became absolute on the first of April, 1856, and therefore vested the title of said premises in Daniel I. Hitchcock, in fee. The defendant made certain points and exceptions to the referee's decision, which are stated in the case. The usual decree of foreclosure was entered, and the defendant appealed.

*W. Wait*, for the appellant.

*J. H. Reynolds*, for the respondent.

*By the Court,* MILLER, J. The principal question which arises in this case is, whether the deed from Zelam Hitchcock to Daniel I. Hitchcock was intended by the parties as a sale, or as security for money loaned. The deed is absolute upon its face, but is accompanied by an agreement to reconvey the premises upon certain conditions. These conditions were not complied with, and hence the right to a reconveyance was forfeited, unless the deed, with the accompanying instrument, can be considered as a mortgage.

To constitute a mortgage, under such circumstances, it must be made to appear from the instrument or otherwise, that the transaction was originally intended as security for money—that it was, in fact, a mere loan of money. (*Brown* v. *Dewey*, 2 *Barb.* 28. *Robinson* v. *Cropsey*, 6 *Paige*, 280. *Holmes* v. *Grant*, 8 *id.* 257. *Brown* v. *Dean*, 3 *Wend.* 208.)

If there be a sale, with an agreement to repurchase within a given time, then it is not a mortgage, but what is usually termed a *conditional sale.* (1 *Hil. on Mort.* 63.) Such conditional sales, or defeasable purchases, as they are also commonly called, are valid, and to be taken strictly as independent dealings between strangers, and the time limited for the repurchase must be precisely observed, or the vendor's

right to a reconveyance of the property will be lost. (4 *Kent's Com.* 144.)

The distinction between a mortgage thus executed, and a conditional sale, is very close, and often so nicely balanced that it is difficult to define the true character of instruments thus bearing so many features which assimilate to each other.

The authorities upon the question are not entirely harmonious, and it requires no little discrimination to determine the precise character and bearing of many of the cases which arise involving questions of this nature. It may be observed, however, that to no inconsiderable extent, every case is dependent upon the peculiar circumstances by which it is surrounded; and in disposing of it we must look at the facts to determine what the parties actually intended by the transaction. (*Slee* v. *Manhattan Co.*, 1 *Paige*, 48. *Whittick* v. *Kane*, *Id.* 202. *Cook* v. *Eaton*, 16 *Barb*. 439. *Grimstone* v. *Carter*, 3 *Paige*, 421.)

I am inclined to think that the transaction presented in the case at bar is characterized by all the leading features which constitute a conditional sale, and that it must be thus considered.

The rule applicable to such a case is very clearly laid down in 4 *Kent's Com.* 144, *note a.* It is as follows: "The test of the distinction is this; if the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage; but if the debt is extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of refunding, if he pleases, in a given time, and thereby entitle himself to a reconveyance, it is a conditional sale."

The evidence in the present case does not establish that there was a loan of money, which the deed and agreement were executed for the purpose of securing. And the agreement in writing which, after all, is the true test, and upon the construction of which, mainly, the question presented must be determined, provides for a repurchase by Zelam

Hitchcock, of the premises, upon certain conditions, if they were complied with within the time limited by the agreement. It also appears that the grantee in the deed took possession and had the control of the premises, occupying and enjoying them as his own.

The conveyance does not appear to have been made to secure a debt, but in payment of it. It was a sale of the premises, with an agreement to resell upon certain terms and conditions. The liability of the defendant, the grantor, was discharged and the relation of debtor and creditor did not exist, as by this sale the debt was extinguished, within the rule cited.

An example will illustrate whether the debt still existed. Suppose a suit had been instituted to recover the money shown to have been paid, in favor of the grantee, could the action be maintained? The plaintiff in such a suit would not have been able to prove a loan of money and a promise to refund it, or any agreement to pay it back, different from what the deed and agreement furnished. The deed itself was absolute upon its face, and the agreemeent contained no provision which recognized the fact that the debt still existed, and was to be refunded. The grantee held the land, and hence was paid, and the debt was canceled. It is quite plain that the action for the money could not be upheld. So also, within the rule laid down, the grantor had the privilege of refunding the money if he chose to do so, by a given time, and was thereby entitled to a reconveyance, which made the transaction a conditional sale. I think a conditional sale, in the present case, is established, within the rule laid down, and in accordance with numerous decisions of the courts. (*See Brown* v. *Dewey,* 2 *Barb.* 28 ; *Baker* v. *Thrasher,* 4 *Denio,* 493 ; *White* v. *Schuyler, MS. G. T. 3d dist.*)

We have been referred to numerous authorities which sustain the general principle applicable to such cases, that when the instrument is intended to secure the payment of money which is treated as a debt, it should be construed as a mort-

gage.  (*See Murray* v. *Walker*, 31 *N. Y. Rep.* 399 ; *Henry* v. *Davis*, 7 *John. Ch.* 40, *affirmed* 2 *Cowen*, 324 ; *Roach* v. *Cosine*, 9 *Wend.* 227, 232 ; *Brown* v. *Dean*, 3 *id.* 208 ; *Jackson* v. *Green*, 4 *John.* 186 ; *Peterson* v. *Clark*, 15 *id.* 205 ; *Stewart* v. *Hutchins*, 13 *Wend.* 485, 487 ; *Parsons* v. *Mumford*, 3 *Barb. Ch.* 152 ; *Barton* v. *May*, 3 *Sandf. Ch.* 450 ; *Lawrence* v. *Farmers' Loan and Trust Co.*, 13 *N. Y. Rep.* 200, 642.)

A careful examination of these authorities shows, with great distinctness, that in all of the cases cited, it was very obvious that the object and intention of the instruments made was to secure a debt, and that there was no design to make a *conditional* sale of the premises. None of them, I think, establish a case which exhibits the striking and marked features of an absolute sale which are apparent here. I do not think, therefore, that any of them are adverse to upholding the transaction between the parties in the case now considered, as a *conditional sale.*

If the conveyance and the accompanying papers prove a conditional sale, as I think they do, beyond any question, then there can be no doubt that the title of Daniel I. Hitchcock became absolute, and that he had a perfect right to mortgage the property thus conveyed to him, and to which his title had become perfect by an entire failure on the part of the grantor to fulfil the conditions, upon the performance of which he was entitled to a reconveyance.

The plaintiff claims that he had no notice of the defeasance, or of any infirmity in the title to the premises, and hence he should be protected. The conveyance to Daniel I. Hitchcock was recorded as a deed, and the defeasance was not recorded. The evidence as to notice to the plaintiff is somewhat uncertain, and is certainly conflicting. It is entirely denied by the plaintiff that he had any knowledge of any other paper than the deed, prior to the execution of the mortgages, or at least that there was any thing more than an agreement to the effect that if the incumbrances were all

paid up by a certain time the farm was to be conveyed back. As the evidence stood, the referee would have been justified, I think, in refusing to find that the plaintiff took the mortgages with full knowledge that the conveyance was only intended as a mortgage. As, however, I have arrived at the conclusion that there was a conditional sale of the premises, it is not important to enter upon a full discussion of the question made as to notice to the plaintiff of the defendant's claim.

As this is not an action between Daniel I. Hitchcock and Zelam Hitchcock, and there is evidence to show that the plaintiff was an innocent purchaser without notice, I do not think that the question arises, whether the default of Zelam Hitchcock would be excused by the alleged refusal of Daniel I. Hitchcock to render an account, so as to enable Zelam to pay him the moneys which Daniel had advanced.

The evidence in the case shows that Zelam Hitchcock was in possession of a portion of the premises covered by the mortgages, and he was therefore necessarily a proper party to this action.

There may, perhaps, be some doubt whether the exceptions taken by the defendant, upon the trial, are sufficiently specific to present the questions which I have discussed, as there was no special request made to find that the rights of the appellant were superior to those of Daniel I. Hitchcock, or even in the form of the exceptions as stated in the case; but as I have arrived at a conclusion adverse to the appellant, upon the main question which arises, a discussion of that point becomes unimportant and unnecessary. The decision of the referee was right, and the judgment should be affirmed, with costs of appeal.

[ALBANY GENERAL TERM, May 7, 1866. *Miller, Ingalls* and *Hogeboom,* Justices.]