## RAPHAEL M. GOMEZ AND ANOTHER *v.* JOHN A. KAMPING.

Where the answer in an action for conversion sets up that the title of the plaintiffs in the property is that of mortgagees only, and that defendant is entitled upon making a payment, to withdraw a proportionate part of the hypothecated property, and that he has made such a payment, for which, in making demand of the goods, the plaintiffs have made no allowance;—this is an admission of a valid transfer of an interest in the goods to plaintiffs, and of their right to recover for a proportionate part, as well as of a demand for the goods. Per ROBINSON, J.

Under such pleadings, the defendant will not be permitted to show, on the trial, that the plaintiffs had no interest in the goods whatever, nor that defendant holds them as a bailee for the plaintiffs.

The defendant gave the plaintiffs an unsigned bill of sale for goods, and at the same time signed a receipt, reciting that he had received the goods on storage for plaintiffs. *Held,* that the two instruments were to be construed together, and made a valid sale, as the latter instrument was an acknowledgement of the consummation of the contract of sale, and was evidence that the defendant retained the goods as a mere bailee for the plaintiffs.

Defendant being indebted to plaintiffs, on a note, gave them a bill of sale of certain goods for the amount due, and while retaining the possession of the goods, gave plaintiffs a storage receipt, acknowledging that he held them for plaintiffs. It was verbally agreed that defendant might have the goods again by paying the debt in a specified time, and plaintiffs retained the note. *Held,* this was a conditional sale, and not a mortgage of the goods.

EXCEPTIONS heard at general term.

On December 24th, 1867, the plaintiffs held the promissory note of the defendant, due that day, for $615 09. The defendant, being unable to pay the note, and having 50 cases of Muscat wine and 100 cases of Hygienic wine, gave plaintiffs a bill of sale of such wines as follows:

"New York, December 24th, 1867.

Messrs. Gomez, Wallis & Co.

Bo't of J. A. Kamping, importer
of wines, 31 and 33 Broadway.

| | |
|---|---|
| 50 cases Muscat wine (50 doz.) . . . | $200 00 |
| 100 cases Hygienic wine (100 doz.) . . | 415 00 |
| | $615 00." |

The goods were not delivered, but defendant gave plaintiffs the following storage receipt:

"New York, December 24th, 1867.

"Received on storage from Messrs. Gomez, Wallis & Co. fifty (50) dozen Muscat wine, and one hundred (100) dozen Hygienic wine, at No. 33 Broadway, in basement. J. A. Kamping."

The plaintiffs gave defendant permission to get them back in thirty or forty days, he paying the money.

The plaintiffs always retained the original note for $615 09.

On March 27th, 1868, the defendant paid $50 on the note; and on May 23d, 1868, he also paid $50 on the note.

On November 12th, 1868, plaintiffs demanded the wines of defendant, sending a cartman therefor with the following written order: "New York, 12th November, 1868. Messrs. J. A. Kamping, 33 Broadway. Please deliver to John G. Glasson or order fifty (50) dozen Muscat wine and one hundred (100) dozen Hygienic do., stored for our account, and oblige. Yours, &c., Gomez, Wallis & Co." The defendant refused to deliver the wines.

The plaintiffs then brought this action for unlawful conversion, claiming damages $615 09 and interest. The defendant answered that he delivered the bill of sale and storage receipt as security only for the indebtedness of $615 09, with the understanding that as he paid on account he might withdraw a proportionate part of the wines so hypothecated; that he had paid $100 on account of his debt.

On the trial, the plaintiffs offered to return the note for $615 09, which defendant declined to accept.

The court ordered a verdict for $697 60 for plaintiffs. The defendant asked the court to instruct the jury to deduct the $100 paid by him, which the court refused.

The exceptions were ordered to be heard in the first instance at the general term, and judgment suspended.

*D. S. Riddle*, for defendant.

*John P. McGowan*, for plaintiffs.

ROBINSON, J.—Plaintiffs sued for a conversion of a quantity of wines they had entrusted to defendant's possession.

He denied such conversion, and alleged that, being indebted to plaintiffs in the sum of $615 09, he delivered to them, " as security, and not otherwise, for the payment of said indebtedness, a bill of sale and storage receipt of the wines mentioned in the complaint, with the understanding that, as this defendant paid on account of said indebtedness, he might withdraw a proportionate part of said wines so hypothecated." That he had paid $100 on account, and the demand of plaintiffs was for the whole of the wines, without allowing him for this credit, or deducting a proportionate part, as agreed, and that he refused to comply with plaintiffs' order for the whole, under these circumstances.

The admission of a valid transfer of the wines and the right to recover for all but a proportionate part (as $100 is to $615), is complete; but the claim to withdraw such proportionate part, or some indefinite articles out of those transferred, as payment was made therefor, is the only qualification to the allegation of the complaint of ownership and right to possession, as well as of a demand for the wines, so sold to and held on storage for the plaintiffs.

On the trial, it appeared that the sale was made December 24th, 1867, on the maturity of a note of defendant for the amount above stated, and that the amount of the note was the *agreed price* for the wine; *that the privilege was given him to get the goods back on paying the amount in thirty or forty days;* that he had repaid $50 in March and $50 in May following; that the demand for the goods on the part of the plaintiff was made of defendant in November, 1868, when he said " he could not deliver the wines," and being asked the reason why, he stated " he had disposed of it, and did not have it."

Neither the existence of the plaintiff's title in at least five-sixths of the goods, nor defendant's possession of them as a mere bailee, or his refusal to surrender them, were put in issue by the pleadings. Under these circumstances, there does not seem to be any question of the plaintiff's right of recovery. The motion to dismiss the complaint for·any of the reasons

stated, founded upon the want of defendant's signature to a bill of sale produced, or for the non-surrender of the note at the time of the sale, was properly denied.

These objections, taken on the trial, as well as the points and arguments of the appellant, disregard the case presented by the pleadings, which admitted the sale and transfer of the property to the plaintiffs, as security for an antecedent debt, and that the possession of the defendant was only that of bailee, with special rights of reclamation or withdrawal as payments were made.

The considerations which the defendant presents, in denial of the validity of the sale, ought to have been raised by the answer. On the trial he was precluded from bringing into question what was distinctly alleged and he had admitted by his pleading. The value of the goods, at the time of the demand and refusal to deliver them, was conceded to be $1,200, and the recovery of but $697 60 worked no injustice, unless the interest of the plaintiffs in the goods was only as mortgagees, and to the extent of any balance due them on the note, after allowing the $100 as having been paid upon it, as *a debt*, not by way of purchase of the property. The unsigned bill of sale and the storage receipt, dated the same day, given simultaneously, but subscribed by defendant, are to be taken together and accepted as part of the same transaction. The latter constituted more than a symbolical delivery, and being in writing, not only affirmed the sale, but evidenced in express terms that the possession of the goods retained by the defendant was in the character of *bailee* (Browne on Statute of Frauds, §§ 322 to 327.

This written recognition of the sale and express acknowledgment of the execution of the *contract* of sale and of such new relation, was a compliance with and a consummation of the purposes of the statute of frauds, which is only directed against *executory* contracts for the sale and delivery of goods.

No proof was given by defendant that the papers were executed *as a mere security*, or that the transaction was intended as a mere mortgage (*Grimstone* v. *Carter*, 3 Paige, 421; *Robinson* v. *Cropsey*, 6 Id. 480; *Holmes* v. *Grant*, 8

Id. 243 ; *Quirk* v. *Rodman*, 5 Duer, 285 ; *Saxton* v. *Hitch-cock*, 47 Barb. 220). While absolute grants or transfers of property may be shown by parol to have been intended as mortgages, and there is often much difficulty in distinguishing a mortgage from a conditional sale, I think the present case is of the latter character. The evidence established, that the property was sold for a fixed price ; that the debt due upon the note was paid and extinguished by the sale (4 Kent's Com. 144, note *a*), and the mere retention of the paid note for the purposes of the conditional repurchase, did not continue it as a legal obligation of any force or effect. The plaintiff's testimony as well as the writings showed that the transaction was a sale with a conditional right of repurchase by payment, in thirty or forty days, of $615 (the amount of the matured note), and the defendant failed to offer any contradiction. By express agreement, the property was held by the defendant on *storage*, and the new relation of bailor and bailee was established. This vested in the plaintiffs the complete ownership of the property, with all attendant risks of casual loss, except such as might occur through the neglect of the defendant as warehouseman.

Under these circumstances, the *express* agreement of the parties, defining their respective relations to the property, cannot be varied by parol, to show a different intent from that evidenced by the legal construction resulting from the writings made between them. The point under consideration is solved by answer to the question : Which of the parties to this transaction would have sustained the loss from an accidental destruction of the property by fire, immediately after the transaction of the 24th of December ? It is manifest it would have fallen upon plaintiff. The express agreement of the parties in writing constituting the transaction a conditional sale, and the obligation of the defendant that of a *mere bailee*, could not be varied by parol testimony, far less (in the absence of fraud, accident or mistake) can any latent intent be presumed contrary to the *express declaration of the parties* so as to construe the transaction into a mortgage.

The conditional right of repurchase was never consummated, and the partial payments to effect it did not, under the

evidence, restore him to any rights in the property, or entitle him to any credit for the amounts he had so paid in part (but incomplete) performance.

The amount for which the verdict was directed was less than the value of plaintiff's interest in the property converted by the defendant to his own use, and was in no respect prejudicial to any of his legal rights.

Judgment should be rendered for the amount of the verdict.

Loew, J., concurred.

Joseph F. Daly, J. (dissenting).—My view is that the transactions between plaintiffs and defendant on December 24, 1867, amounted to a mortgage of the wines to secure the payment of the defendant's note for $615 09 due that day. The plaintiffs' testimony shows this. The bill of sale conveyed the title in the wine to plaintiffs, but the defeasance is sworn to by Arguimban, one of them, who says, "I gave him the privilege to get them back in 30 or 40 days, he paying me the money. The note, the original evidence of the debt, was also retained, and *payments on it* were afterwards received by plaintiffs. These circumstances constituted plaintiffs mortgagees only (31 N. Y. 542; 8 Wend. 375, 392; 8 Johns. 96; 7 Cow. 290).

The defendant was a mortgagor in possession. The storage receipts he gave amounted to no more than the usual covenant in mortgages, that until default the goods were to remain with the mortgagor.

The defendant did not pay the note in 30 or 40 days, and the plaintiffs became entitled to take the goods as mortgagors. The defendant paid $50 about a month after default, and another $50 about three months after default. These payments reduced the mortgaged debt, but did not extend the time nor waive the default (*Charter* v. *Stevens*, 3 Den. 33).

The plaintiffs had the right to take the goods when they made the demand, nearly six months after the last payment, and if they were refused, had the right to recover them or to sue as for a conversion. But even if they were delivered, the defendant would have had the right to redeem them before sale

by tendering the balance due on the debt (Story on Bailm. § 287); and when sued for the property or the conversion, he has a right to mitigate the plaintiffs' recovery by reducing it to the amount actually due upon the mortgage (*Hinman* v. *Judson*, 13 Barb. 629).

This rule should have been applied on the trial of this action. The defendant asked it and the judge refused. The plaintiffs are entitled to judgment for $615 09, with interest from December 24, 1867, less $50, with interest from March 27, 1868, and $50, with interest from May 23, 1868. If the plaintiffs consent to such modification, they may enter judgment therefor; if not, a new trial should be ordered.

The defendant is entitled to costs of this appeal.

Judgment for the amount of the verdict.