Denise FELIX, Plaintiff,

Naomi Felix and Irene Cooper as administrators of the estate of Denise Felix, Plaintiffs–Appellants,

v.

NEW YORK CITY TRANSIT AUTHORITY, Defendant–Appellee.

No. 01–7967.

United States Court of Appeals, Second Circuit.

Argued May 21, 2002.

Decided: March 31, 2003.

activity. The United States District Court for the Southern District of New York (Shira A. Scheindlin, *District Judge*) granted summary judgment to the defendant because the major life activity was not causally related to the accommodation requested. We affirm.

Laura Sager, Washington Square Legal Services, Inc., (Valerie Hsieh, Raminta Rudys, law students, argued and on the brief, Margo Ferrandino, law student, on the brief,), New York, NY, for Plaintiff–Appellant.

Richard Schoolman, Office of the General Counsel, New York City Transit Authority, Brooklyn, NY, for Defendant–Appellee.

Barbara L. Sloan, Equal Employment Opportunity Commission, (Nicholas M. Inzeo, Acting Deputy General Counsel, Philip B. Sklover, Assistant General Counsel, Vincent J. Blackwood, Assistant General Counsel, on the brief), Washington, DC, for Amicus Curiae.

Before: WALKER, Chief Judge, JACOBS and LEVAL, Circuit Judges.

Judge JACOBS joins in the majority opinion and files a separate concurring opinion.

Judge LEVAL dissents in a separate opinion.

JOHN M. WALKER, Jr., Chief Judge.

Denise Felix sued her former employer, the New York City Transit Authority, under the Americans with Disabilities Act, alleging that she was entitled to a position that did not involve working in the subway, which she could not do because of Post–Traumatic Stress Disorder that was interfering with her ability to sleep, a major life

## BACKGROUND

In 1994, Denise Felix was hired as a "Railroad Clerk" by the New York City Transit Authority ("NYCTA"). In 1996, the NYCTA employed approximately 3,417 Railroad Clerks. The overwhelming majority of Railroad Clerks work in token booths in subway stations, where they sell tokens, commuter passes, and fare cards, and provide information to passengers. Approximately 50 Railroad Clerks work in office jobs. The Railroad Clerks assigned to office jobs are deployed to work in token booths a few days a year.

On November 26, 1995, Felix was assigned as an "extra" Railroad Clerk, relieving Railroad Clerks who were on breaks. While en route to relieve the Railroad Clerk on the northbound platform of the Kingston and Throop Station, Felix was informed that the Railroad Clerk on the southbound platform of that station had been killed in a firebombing incident. Felix saw the smoke-filled platform and was stuck inside the train for some time. Felix was traumatized by the realization that she could have been killed and was taken to the Kings County Hospital's Emergency Room.

Felix reported to the NYCTA's Medical Assessment Center the next day. She was initially categorized as temporarily medically unable to work. From December 7, 1995 until August 15, 1996, Felix was designated "restricted work, temporary." Her doctors diagnosed her with Post–Traumatic Stress Disorder ("PTSD"); her

condition included feelings of apprehension and anxiety, recurrent problems with insomnia, and an inability to work in the subways. Her doctors specified that she was not to do any subway work, but could do clerical work. At some point not later than August 13, 1996, Felix requested a reassignment to a position that would not require her to work in the subway as an accommodation of her medical problems. On August 15, 1996, her designation was changed to "no work, temporary." On November 26, 1996, Felix was terminated pursuant to Civil Service Law § 71, which authorizes the termination of a civil service employee who has been unable to return to work for a year. N.Y. Civ. Serv. § 71.

After exhausting her administrative remedies and receiving a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), Felix commenced this suit alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 *et seq.* Denise Felix died on July 27, 2000, before the completion of the district court proceedings, due to causes unrelated to the events at issue in this case and the administrators of her estate were substituted as plaintiffs. Because this substitution has no practical effect on the litigation, we adhere to the previous party designations for the sake of convenience.

The NYCTA moved for summary judgment, arguing that (1) her receipt of Social Security disability benefits should estop her from claiming that she was able to work, (2) no reasonable accommodation was available because the ability to work in subways was an essential function of Railroad Clerks, and (3) there was no nexus between the major life activity impaired and the accommodation requested. The district court rejected the first two arguments but granted summary judgment in favor of NYCTA on the basis of its third

argument. *Felix v. New York City Transit Auth.,* 154 F.Supp.2d 640, 659 (S.D.N.Y. 2001). We affirm.

## DISCUSSION

■ We review the district court's grant of summary judgment *de novo,* resolving all disputed facts in the non-movant's favor. *Tri–State Empl. Servs., Inc. v. Mountbatten Sur. Co.,* 295 F.3d 256, 260 (2d Cir.2002).

The Americans with Disabilities Act ("ADA") protects people with disabilities, defined as individuals with "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Title I of the ADA, which protects individuals with disability within the workplace, prohibits "discriminating" against an employee with a disability "because of the disability of such individual." 42 U.S.C. § 12112(a). The statute defines "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

■ The NYCTA concedes that Felix has a disability because her insomnia limits the major life activity of sleeping. Although the NYCTA presents additional arguments for why it did not need to grant the requested accommodation, we address only the issue the district court found determinative: Whether there must be a causal link between the specific condition which limits a major life activity and the accommodation required.

We start our analysis with the text of the statute. The statutory language prohibits discrimination against an employee

"because of the disability of such individual." 42 U.S.C. § 12112(a). Although "discriminate" is defined in very broad terms, that expansive definition does not change the requirement that to be actionable the discrimination must be "because of the disability." Reading the requirement of reasonable accommodation in this light, an employer discriminates against an employee with a disability only by failing to provide a reasonable accommodation for the "disability" which is the impairment of the major life activity. Other impairments that do not amount to a "disability" as defined by 42 U.S.C. § 12102(2)(a) do not require accommodation under the ADA.

The principle is not altered by the fact that the disability (which must be accommodated) is caused by another impairment (which need not be accommodated). In this case, her disability was her insomnia which substantially limited her ability to sleep. Felix's inability to work in the subway did not substantially limit any major life activity. She was fully able to work, just not in the subway. Her inability to work in the subway was related to her insomnia because they both stemmed from the same traumatic incident and resultant psychological disorder, the PTSD. But this common traumatic origin alone does not mean that the non-disability impairment is entitled to an accommodation.

A simple hypothetical of a car accident illustrates the point well. A passenger in a car is badly injured in an accident. The passenger loses the ability to walk, a major life activity and thus has a "disability" that qualifies him for accommodation. The passenger also suffers some injury to his arms, which lower his typing speed from one-hundred words per minute to forty words per minute, without seriously limiting his ability to perform the major life activity of working in general. Because his arm injuries do not substantially limit any major life activity, these injuries are not a disability. His employer terminates him from a position doing data entry and word processing because his productivity has decreased. The fact that the disability, the inability to walk, and the limitation of his typing stem from the same accident does not change the fact that he was not discriminated against "because of [his] disability." Similarly, Felix's inability to sleep (a significant limitation on a major life activity) is separate from her inability to work in the subway (not a significant limitation on the major life activity of working in general), even though both were caused by the subway firebombing and the resultant PTSD.

Felix and the EEOC as amicus curiae argue that prior precedent forecloses this conclusion and that once a person has a disability as defined by 42 U.S.C. § 12102(2)(A), any other impairment that resulted from the cause of the disability must be accommodated even if that impairment does not substantially limit a major life activity and thus is not itself a disability. We disagree. The cases Felix relies on are inapposite to her case because in each instance the impairment for which plaintiff sought an accommodation flowed directly from the disability itself and was therefore "because of the disability." Felix points to cases addressing AIDS, epilepsy, paralysis, and mental illness.

In *Bragdon v. Abbott* the Supreme Court held that for purposes of receiving a public accommodation of dental treatment, a person with AIDS is a person with a disability because AIDS interferes with the major life activity of reproduction. 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Although the right to the public accommodation of dental treatment is secured by Title III of the ADA, not by Title I, the definition of "disability"

applies to all of the ADA. *Toyota Motor Manuf., Ky., Inc. v. Williams*, 534 U.S. 184, 201, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). However, contrary to Felix's argument, the dentist in *Bragdon* denied services to the plaintiff purely because of Bragdon's disability, her infection with HIV. Although the life activity of reproduction was not directly connected to the dentist's unreasonable failure to accommodate Bragdon, the same specific medical condition—the risk of HIV transmission—was responsible for both the impairment of her reproductive capacity and the dentist's unreasonable failure to accommodate her. Thus, the discrimination was because of her disability.

Felix also points to cases that have required reasonable accommodations for disabilities that impair major life activities outside of the workplace but also cause impairments within the workplace. For example, we have permitted a plaintiff to survive summary judgment where she was denied a promotion because she could not drive due to her epilepsy, *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 217 (2d Cir.2001), despite the fact that driving is not considered a major life activity. *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998). Felix argues that because the impairment that affected Lovejoy–Wilson's eligibility for promotion was her inability to drive, which was caused by her epilepsy but not part of the major life activity that epilepsy interferes with, a causal connection between the major life activity impaired and the accommodation requested cannot be required. However, Lovejoy–Wilson's inability to drive is due to the same disability—periodic and sudden loss of all motor control—that qualifies her as disabled be-

cause it substantially impairs a major life activity.[1]

Felix cites to similar cases from other circuits. The Seventh Circuit addressed a case where a woman paralyzed from the waist down requested accommodation for pressure ulcers that she periodically develops as a result of her paralysis. *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 543–44 (7th Cir.1995). Although the pressure ulcers do not directly relate to walking—the major life activity which was impaired—the Seventh Circuit found that the ulcers were "a characteristic manifestation of [the] disability" and thus were "a part of the underlying disability." *Id.* at 544. Felix also looks for support from the Ninth Circuit's holding that whether a plaintiff "faced substantial limitations in his ability to work is irrelevant to whether his limitations in other major life activities qualify him as disabled for ADA purposes." *McAlindin v. County of San Diego*, 192 F.3d 1226, 1233 (9th Cir.1999). But we agree with the Ninth Circuit that a plaintiff can seek accommodation at work even if the impairment only qualifies as a disability because of a life activity other than working. Like the other cases to which Felix cites, *McAlindin* differs from Felix's situation because McAlindin appeared to be seeking accommodation for the same mental impairments, such as the inability to interact with other people, as constituted his claimed disability.

█ Felix seeks a workplace accommodation for a mental condition which does not flow directly from her disability—the mental condition of insomnia that prevents her from sleeping. Felix did not argue to the NYCTA that she was unable to work in the subway because such work aggravated her insomnia; she told the NYCTA

---

1. The Court in *Lovejoy–Wilson* relied on EEOC regulations that specify that epilepsy constitutes a disability and therefore did not

have to determine which major life activity was impaired. *Lovejoy–Wilson*, 263 F.3d at 216 (citing 29 C.F.R. 1615.103(1)(ii)).

that she could not work in the subway because she was "terrified of being alone and closed in." Thus, in contrast to the cases upon which she relies, the impairment for which Felix seeks accommodation does not arise "because of the disability." If the requested accommodation addressed a limitation caused by Felix's insomnia, it would be covered by the ADA. Adverse effects of disabilities and adverse or side effects from the medical treatment of disabilities arise "because of the disability." However, other impairments not caused by the disability need not be accommodated.

Felix contends that her case falls within our precedents by arguing that her insomnia and her fear of being in the subway are part of the same singular mental disability, the PTSD, and thus her inability to work in the subway is also "because of the disability." However, we do not view her insomnia and fear of the subway as a singular mental condition: They are two mental conditions that derive from the same traumatic incident. In cases involving conditions like AIDS that are discrete diseases with pervasive effects, it will frequently be obvious that the lesser impairment is caused by the disability. However, in situations like plaintiff's where it is not clear that a single, particular medical condition is responsible for both the disability and the lesser impairment, the plaintiff must show a causal connection between the specific condition which impairs a major life activity and the accommodation. Felix has not done so here.

Finally, we note that our interpretation of the language of the statute is supported by policy considerations. The ADA serves the important function of ensuring that people with disabilities are given the same opportunities and are able to enjoy the same benefits as other Americans. The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally. *See U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 122 S.Ct. 1516, 1521, 152 L.Ed.2d 589 (2002). The interpretation advanced by Felix and the EEOC would transform the ADA from an act that prohibits discrimination into an act that requires treating people with disabilities better than others who are not disabled but have the same impairment for which accommodation is sought. We think that the ADA deliberately speaks in terms of eliminating discrimination and thus do not interpret it so broadly as to require the accommodation of impairments that do not limit major life activities whenever the person with an impairment happens to also have a disability.

Adopting this principle would effectively eviscerate the statutory definition of a disability as an impairment of a major life activity—a significant threshold for seeking redress under the ADA. An ADA plaintiff who is not otherwise impaired in a major life activity but suffers debilitating anxiety or stress from a particular job could get to a jury merely by alleging that the job causes insomnia, difficulty breathing, or some other set of disabling symptoms that can be characterized as a syndrome. We decline to adopt such an expansive reading of the ADA that frustrates its plain statutory meaning. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (inability to perform "a single, particular job" is not a substantial limitation upon working (quoting 29 C.F.R. § 1630.2(j)(3)(i))).

To recap, plaintiff fails to state a claim under the ADA because she did not seek accommodation "because of [her] disability" and therefore we affirm the district court's grant of summary judgment in favor of the defendant.

## CONCLUSION

We affirm summary judgment in favor of NYCTA and against Felix.

JACOBS, Circuit Judge, concurring.

The dissent argues that the plaintiff, a subway token-clerk who suffers from insomnia when she is underground or near trains, may be entitled to an accommodation reassigning her to a clerical position.

The dissenting argument is based on the buried assumption that an employee is disabled (and an employer owes an accommodation) even when the impairment is caused by the particular job and would not exist if the employee did something else. Virtually all ramifications of this assumption (if adopted) would be absurd.

For example, if a nasty supervisor induces a stress level that substantially impairs an employee's sleep (a major life activity), I do not think that the employer is required to accommodate the sleep impairment by a transfer to a boss who is nicer. Similarly, a lifeguard who has had a near-drowning experience cannot demand a desk job on the ground that she would hyperventilate (arguably a substantial impairment of the major life activity of breathing), or suffer insomnia, if she were to go in the water. And a person whose fear of flying impairs his breathing or sleep cannot insist on circus employment as one of the human cannon-balls and compel an accommodation that allows him to sell the tickets.

According to the dissent, the plaintiff's insomnia is merely exacerbated rather than caused by working underground; even so, however, the requested reassignment would not be a reasonable accommodation. The dissent assumes that if a disability has been shown and an accommodation named, the burden shifts to the employer to advance a cost-benefit analy-

sis showing that the named accommodation creates an undue burden. *See* 42 U.S.C. § 12111(10)(B); *Borkowski v. Valley Central School District,* 63 F.3d 131, 138 (2d Cir.1995). That assumption makes sense in the common run of cases, in which the named accommodation would either enable the employee to perform the essential job duties or in some demonstrable way alleviate or treat the disabling condition. *See, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 217–218 (2d Cir.2001); *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 335–36 (2d Cir.2000); *Stone v. City of Mount Vernon,* 118 F.3d 92, 93–94, 100 (2d Cir.1997); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383–84 (2d Cir.1996).

This case (as the dissent conceives it) would present a new, intermediate question: whether the expected benefit to the employee of the accommodation requested is capable of being gauged, so that a cost-benefit analysis can be done; if not, the accommodation is unreasonable as a matter of law. *See Borkowski,* 63 F.3d at 138 ("In short, an accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce."). The accommodation demanded here places appreciable costs on the employer: a subway token-seller would be removed from the vicinity of subways and relieved from selling tokens. Moreover, the accommodation of insomnia by reassignments that reduce stress or alleviate any phobia could easily entail transfers of numerous token-sellers who could plausibly assert insomnia and demand work above-ground (or below), in the day (or the night), etcetera, according to their self-described psychological imperatives. *See* 42 U.S.C. § 12111(10)(B)(ii)(defining relevant cost factors to include "the effect on expenses and resources, or the impact oth-

erwise of such accommodations upon the operation of the facility").

On the other side of the balance, the benefit of accommodating this employee's insomnia cannot be estimated, depending as it does on the relative severity of the disorder (as compared with some unknown norm for sleeptime), the absolute severity of the disorder (which is self-reported and depends on a drowsy person's estimate of how long she is unconscious), and the efficacy or sufficiency of measures taken at work to help the plaintiff sleep better at night (which wholly depends on the employee's say-so).[1]

An accommodation that is demanded in order to reduce stress or make the employee more tranquil is in the nature of an amenity that if broadly required would transform the workplace in a way incompatible with productivity.

LEVAL, Judge, dissenting.

I respectfully dissent.

### A.

The majority affirms the district court's grant of summary judgment to the defendant because it concludes that under the ADA "there must be a causal link between the specific condition which limits a major life activity and the accommodation" sought by the employee. Maj. Op. at 104. I do not disagree with the majority's perception of this requirement. The requirement, however, is satisfied in this case.

As the majority agrees, Felix satisfied the statute's requirement to be classified as "disabled" because of evidence that her Post–Traumatic Stress Disorder ("PTSD") involved impairment of a major life activity—the ability to sleep. If she suffered impairment of a major life activity, she was entitled to "reasonable accommodation[ ]" of that disability. 42 U.S.C. § 12112(b)(5)(A). The majority asserts, correctly in my view, that Felix has no statutory entitlement to accommodation unless the demanded accommodation would alleviate (or avoid aggravating) her sleep disorder. Her evidence shows exactly that.

Felix submitted evidence that working underground in the subway would aggravate her inability to sleep, and, conversely, that working above ground (the requested accommodation) would alleviate the disability (or avoid aggravating it).[1] If the requested accommodation was "reasonable" within the meaning of the statute,

---

1. The dissent puts store in the medical diagnosis that this plaintiff's insomnia is a product of post-traumatic stress disorder. [Dissent at 110.] That syndrome is real enough, but it is (as the phrase denotes) a diagnostic grouping in each case of whatever nervous manifestations a particular person suffers in the wake of stress. One person may react to stress by insomnia, another by sleeping overmuch; one person is manic, another is enervated; one overeats, another fasts; one cannot go out in public, another needs a crowd. The diagnosis does not predict the symptom of insomnia, does not suggest its severity or treatment, and therefore cannot be used by an employer to differentiate the disabled from persons who are merely impaired or uncomfortable.

1. The evidence showed, for example, that Felix did not sleep for more than one or two hours per night for over two weeks, after being asked by her psychiatrist to visit a subway token booth on June 7, 1996. Felix's medical evaluations recommended work above ground, stating that below-ground assignments would aggravate her PTSD, the condition that caused the sleep disorder. Although the doctors did not state this with optimal clarity, a fact finder could easily find on the basis of the medical opinions that work below ground would aggravate the sleep disorder.

she was entitled to it.[2]

### B.

Judge Jacobs, speaking for himself alone and not for the court, contends that my argument "is based on the buried assumption that an employee is disabled (and an employer owes an accommodation) even when the impairment is caused by the particular job and would not exist if the employee did something else." Conc. Op. at 108. He is mistaken. My argument is in no way premised on that assumption.

As the majority opinion notes, "[Felix's] doctors diagnosed her with Post–Traumatic Stress Disorder ('PTSD') [including] recurrent problems with insomnia." Maj. Op. at 103–104. The majority concludes, correctly, "[H]er disability was her insomnia." *Id.* at 104. There is no suggestion that her insomnia occurred only when she worked underground. To the contrary, her ability to sleep was impaired during her twelve months of medical leave, when she was not working at all. Felix may be entitled to an accommodation (only if reasonable) in the form of an above-ground assignment because a jury could find that work below ground aggravates her sleep disorder.[3]

In short, the case has nothing to do with human cannonballs who want to sell circus tickets. Our case is quite different and is really very simple. A plaintiff who is disabled by reason of inability to sleep has requested relief from an assignment that aggravates the sleep disorder. Her entitlement depends on whether the requested accommodation is "reasonable," given the nature of the employer's business. That question was never addressed because the district court granted summary judgment, failing to recognize that the accommodation was sought to alleviate the disability. We should remand for trial.

---

**2.** The majority avoids dealing with the relationship between the impairment of the major life activity and the requested accommodation by observing that "Felix did not argue to the NYCTA that she was unable to work in the subway because such work aggravated her insomnia." Maj. Op. at 106. Even if this is so, it is irrelevant. NYCTA's own doctors found that Felix had developed a sleep disorder, and that it was aggravated by going underground. NYCTA was thus well aware that above-ground assignment would alleviate her disability.

**3.** Judge Jacobs correctly observes that the reasonableness of a requested accommodation is usually determined by performing a cost-benefit analysis. I do not argue that the costs of Felix's requested accommodation are necessarily outweighed by the benefits, but only that she was entitled to a chance to demonstrate at trial that they are. Judge Jacobs appears in addition to argue that the remedy of reasonable accommodation can never be found on the basis of emotional conditions that are not susceptible to confirmation by objective tests. On this position I express no opinion, other than to note that it represents Judge Jacobs's personal view and not the holding of the court.