Diane LOVEJOY–WILSON, Plaintiff–
Appellant–Cross–Appellee,

v.

NOCO MOTOR FUEL, INC.,
Defendant–Appellee–
Cross–Appellant.

Docket Nos. 00–7919(L), 00–7969(XAP).

United States Court of Appeals,
Second Circuit.

Argued March 20, 2001.

Decided Aug. 31, 2001.

Mark R. Uba, Connors & Vilardo, LLP (Margaret L. Phillips, of counsel), Buffalo, NY, for Plaintiff–Appellant–Cross–Appellee.

Linda H. Joseph, Buchanan Ingersoll P.C., Buffalo, NY, for Defendant–Appellee–Cross–Appellant.

Susan L.P. Starr, Washington, D.C., for Amicus Curiae Equal Employment Opportunity Commission.

Before FEINBERG, NEWMAN, and SACK, Circuit Judges.

SACK, Circuit Judge:

Plaintiff Diane Lovejoy–Wilson, a former employee of defendant NOCO Motor Fuel, Inc. ("NOCO"), brought an action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101–213, and the New York Human Rights Law ("NYHRL"), New York Executive Law § 296–301, in the United States District Court for the Western District of New York alleging that NOCO discriminated against her on the basis of her disability by constructively discharging her, failing to accommodate her disability,[1] failing to promote her because of her disability, and retaliating against her for complaining about her treatment. The district court (John T. Curtin, *Judge* ) granted summary judgment to the plaintiff with respect to her status as a qualified individual with a disability under the ADA, but granted summary judgment to the defendant on all of the plaintiff's substantive claims.[2] We affirm the district court's grant of summary judgment as to the claim for failure to promote to the position of manager; vacate the district court's order granting summary judgment with respect to the

plaintiff's claims of discrimination based on failure to promote to the position of assistant manager and retaliation; and dismiss the cross-appeal.[3]

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party. *See Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). The statement of facts that follows therefore treats the evidence in the light most favorable to the plaintiff. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

1. As will appear from our discussion, we treat the failure to accommodate as an issue arising on the plaintiff's claim of discrimination for failure to promote to the position of assistant store manager, rather than as a distinct claim.

2. The plaintiff does not challenge the district court's grant of defendant's motion for summary judgment on her constructive discharge claim.

3. We consider the plaintiff's state law claims in tandem with her ADA claims. "Because the analysis under the state law parallels that

used in the ADA context for all issues relevant to this appeal," insofar as we reverse the grant of defendant's motion for summary judgment on the plaintiff's ADA claims, we also reverse the grant of defendant's motion for summary judgment on the plaintiff's state law claims. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n. 1 (2d Cir.2000) (citation omitted); *see also, Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir.1996); *New York State Office of Mental Retardation v. New York State Div. of Human Rights*, 164 A.D.2d 208, 210, 563 N.Y.S.2d 286, 287 (3rd Dept.1990).

## BACKGROUND

The plaintiff suffers from epilepsy and experiences seizures of varying seriousness on virtually a daily basis. Because of her epilepsy and New York State's requirement that an epileptic be seizure-free for two years in order to obtain a driver's license, the plaintiff is unable to drive.

From August 1992 through September 1994, the plaintiff was employed by NOCO at gasoline service stations and associated convenience stores in the Buffalo, New York area operated by NOCO and its predecessor Cumberland Farms. The plaintiff began her employment with NOCO as a clerk in store number 44 ("S–44"), which is located six blocks from her home. In late 1992, the plaintiff told her supervisors that she suffered from epilepsy. In December of that year, she began applying for a promotion to assistant manager of S–44, but was repeatedly denied the promotion because of her inability to drive. According to NOCO, the reason that assistant managers are required to be able to drive is, *inter alia*, to permit them to use their automobiles to take their stores' receipts to the bank for deposit.

In or about December 1993, the plaintiff again told her supervisor that she was interested in being promoted to assistant manager at S–44. He told her that she could not be considered for that position because she did not drive.

The plaintiff then put her request for a promotion in writing. On January 5, 1994, Penny Strausberger, NOCO's director of personnel, responded by letter. She told the plaintiff that she was required to have a valid driver's license in order to be able to fulfill various duties of a store's assistant manager, including "banking." Strausberger also told the plaintiff that NOCO did have four locations at which an armored car service picked up the store's receipts and transported them to the bank for deposit. Strausberger said that the plaintiff could be considered for an assistant manager position at one of those stores when one became available.

The plaintiff replied by letter dated January 20, 1994. She asserted that denying her the promotion she sought because of her disability violated the ADA. She also detailed the other occasions on which she claimed she had been denied a promotion because of her inability to drive. And she suggested six possible accommodations of her disability that would in her view be reasonable. In her words:

1. Another manager can pick me up on the way to the bank and we can go together.

2. I can hire a service to drive me when necessary for my job.

3. NOCO can hire a service to drive disabled employees when necessary for management and supervisory positions.

4. I can hire an individual to drive me when necessary for my job.

5. NOCO can hire an individual to drive disabled employees when necessary for management and supervisory positions.

6. Where practical and possible, I can use public transportation when travel is necessary for my job.

On January 26, 1994, NOCO's president, Robert Newman, replied. He accused the plaintiff of "misinterpreting the law." He continued:

Please note the ADA is not for intimidating employers to change non-discriminatory operational policies. Given our past record of accommodating employees with disabilities, I find your position weak at best. After review with counsel, we feel very strongly about our position. . . .

Additionally, your allegations contained within the letter are slanderous. If you continue this behavior, we will have no

choice but to address your behavior through legal channels.

This is NOCO's final position on this matter and will·not [sic] be entertaining further communication on this matter. He did not respond to the plaintiff's suggestion of possible accommodations.

Approximately one week later, on February 4, 1994, the plaintiff filed a "charge of discrimination" with the federal Equal Employment Opportunity Commission ("EEOC") alleging that NOCO had discriminated against her by failing to promote her, by implementing a promotion policy that had an adverse impact on her and others with disabilities, and by failing to accommodate her disability.

The plaintiff continued to work as a sales clerk at S–44 throughout the winter. Then, on April 8, 1994, she suffered a *grand mal* epileptic seizure while attending the cash register. She fell, striking her elbow on a cabinet. When she told the store manager about the incident, he asked her to complete an accident report. On April 11, after she fell but before she submitted a report on the accident, the plaintiff again applied to become an assistant manager at S–44. She submitted an accident report on April 12, 1994, and was then, by her account, suspended without pay until April 24, 1994. NOCO contends that the plaintiff was not suspended but was taken off the schedule to ensure that she would undergo an evaluation by a physician.

On April 28, 1994, NOCO again denied the plaintiff's application to be assistant manager at S–44. For the first time, NOCO now cited as the reason for the denial alleged cash shortages at S–44 during the plaintiff's shifts. No mention was made of the plaintiff's inability to drive.

Less than a month later, on May 20, 1994, NOCO nonetheless offered the plaintiff an assistant manager position at store number S–40 ("S–40"), one of the four with armored car service where driving in order to deposit store receipts was unnecessary. The plaintiff replied to NOCO's offer by letter dated May 23, 1994, expressing her reservations about working in the stores serviced by armored cars, referring to their locations as undesirable. She said that assigning her and others with similar disabilities to such stores would result in "a segregated employment population" and would "relegat[e] those people with disabilities to some of the least desirable [NOCO] locations." She again suggested what she thought to be a reasonable accommodation that would permit her to serve in a managerial position at S–44: for the assistant manager in a nearby store to drive her to the bank to deposit the S–44 receipts. Despite her reservations, however, the plaintiff ultimately accepted the promotion to assistant manager at S–40.

As an assistant manager at S–40, the plaintiff worked the 3 p.m. to 11 p.m. shift during the week and the 6 a.m. to 3 p.m. shift on weekends. These hours combined with the distance between the plaintiff's home and S–40 meant less time for her to spend with her children. In August 1994, the plaintiff therefore requested assignment as a daytime assistant manager. NOCO never formally responded to this request. On August 24, however, the plaintiff was asked if she would consider a position as store manager. During the week of August 28, she heard "through the grapevine" that she was being promoted to manager. The promotion failed to materialize, however, and, on September 9, 1994, the plaintiff submitted her resignation from NOCO's employment and left work there on September 15. She began a job as a sales clerk at a department store the very next day.

In May 1996, in response to the charges the plaintiff had filed in February 1994, the EEOC issued a determination that

NOCO had violated the ADA because it "had a promotion/selection policy which had an adverse impact upon [the plaintiff] because of her disability and ... retaliated against her when she voiced opposition to [NOCO's] use of that policy."

The plaintiff received a "right-to-sue" letter from the EEOC on November 12, 1996. She filed this lawsuit pursuant thereto on February 6, 1997 alleging violations of the ADA and the NYHRL.

In January 1999, NOCO moved for summary judgment on all of the plaintiff's claims. The following August, the plaintiff answered the motion and cross-moved for partial summary judgment on the question of whether she was a qualified individual with a disability under the ADA. The district court granted NOCO's motion for summary judgment in a decision and order dated December 29, 1999. The district court concluded that while the plaintiff was a qualified individual with a disability, she had not been constructively discharged. The court entered judgment dismissing the complaint in its entirety.

The plaintiff then filed a motion asking the court to amend its judgment and order because of its failure to address her failure to accommodate, failure to promote, and retaliation claims. In response, the district court requested that the plaintiff and NOCO file memoranda regarding the motion.[4] By decision and order dated July 5, 2000, the district court acknowledged that it had not fully addressed the plaintiff's failure to accommodate, failure to promote, and retaliation claims, but concluded that summary judgment for the defendant was also appropriate on those claims. The district court therefore declined to amend its judgment dismissing the complaint.

The plaintiff and NOCO each appeal the district court's judgment. The plaintiff challenges the district court's dismissal of her accommodation, promotion, and retaliation claims. In opposing the appeal and in support of its cross-appeal, NOCO contests the district court's determination that the plaintiff is a qualified individual with a disability under the ADA.

## DISCUSSION

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The plaintiff claims that NOCO discriminated against her because of her epilepsy by failing to promote her and retaliating against her for making complaints of discrimination. We consider her failure to promote claims separately with respect to the positions of assistant manager and manager.

### I. Claim of Failure to Promote to Assistant Manager

In alleging failure to promote to the position of assistant manager because of her disability, the plaintiff advances two theories. Recognizing that an element of her claim is that she must be a "qualified individual with a disability," 42 U.S.C. § 12112, and that this phrase is defined to mean "an individual with a disability who, *with or without* reasonable accommodation, can perform the essential functions of the employment position" sought, *id.* § 12111(8) (emphasis added), the plaintiff

4. Because of the manner in which we resolve this appeal, we need not and do not address the plaintiff's argument that the district court should have provided her with an opportunity to rebut the defendant's memorandum.

primarily alleges that she could be an assistant manager *with* a reasonable accommodation. She also alleges that if the qualifications for the job are correctly understood, she could do the job *without* accommodation.

## A. Promotion to Assistant Manager with a Reasonable Accommodation

Under the ADA, the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee...." 42 U.S.C. § 12112(b)(5)(A). The district court addressed only briefly the issue of reasonable accommodation as it relates to the plaintiff's assistant manager promotion claim before resolving the issue adversely to her as a matter of law. In so doing, it relied on the fact that her desire to become an assistant manager at S–44 was based on personal convenience, not her disability, and that NOCO accommodated her disability by promoting her to assistant manager at a store with armored car service in May 1994. The district court thereby misinterpreted and misapplied the requirements of reasonable accommodation under the ADA and failed to consider the facts in the light most favorable to the plaintiff.

■ *1. The plaintiff's prima facie case.* For a plaintiff who can perform a desired position with a reasonable accommodation to establish a prima facie case of discrimination because of disability, she must show "(1) that [s]he is an individual who has a disability within the meaning of the [ADA], (2) that an employer covered by the statute had notice of h[er] disability, (3) that with reasonable accommodation, [s]he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations." *Stone v. City of*

*Mt. Vernon*, 118 F.3d 92, 96–97 (2d Cir. 1997) (citation omitted). We conclude that the plaintiff has come forward with sufficient evidence to meet her burden of establishing a prima facie case of discrimination foreclosing the granting of a motion for summary judgment against her on this aspect of her assistant manager promotion claim.

First, a person must be an "individual with a disability" in order to receive the protections provided by the ADA. A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual." 42 U.S.C. § 12102(2)(a). NOCO does not dispute that the plaintiff suffers from epilepsy or that epilepsy constitutes a disability under the ADA, a proposition that is well established. *See, e.g.,* 29 C.F.R. 1615.103(1)(ii) (including epilepsy in the definition of "physical or mental impairment"); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 488, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (using epilepsy as an example of a condition that is included in the definition); *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832 (11th Cir.1998) (holding that epilepsy qualifies as a disability under the ADA); *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683 (4th Cir.1997) (same).

Second, NOCO does not dispute that it is covered by the ADA.

■ Third, there is ample evidence from which a jury could reasonably conclude that NOCO had notice of the plaintiff's disability. Although there is some debate about when NOCO received such notice, there is evidence, which we must credit at this stage of the proceedings, from which a jury could conclude that NOCO learned about the plaintiff's disability in December 1992. There is in any event no doubt that when, in January 1994, NOCO declined to consider her for a promotion because of

her inability to drive, it was fully aware of her condition. The plaintiff also referred to her condition and its relationship to her inability to drive in some detail in her letter to NOCO of January 20, 1994. *Cf. Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 265 (1st Cir.1999) (finding that the plaintiff met prima facie case by stating in his affidavit "in substance, that he had a hearing impairment, that [the defendant] knew of it, and ... nonetheless failed to accommodate him").

■ Fourth, a reasonable jury could find that with reasonable accommodation the plaintiff could perform the essential functions of the job she sought. The ADA defines "reasonable accommodation" as including but not limited to "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position...." 42 U.S.C. § 12111(9)(B). ADA regulations further state that an employer is required to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

NOCO does not contend that driving is an essential function of the position of assistant manager. Rather, the evidence presented by NOCO suggests, and the record on appeal discloses no reason to doubt NOCO's contention that, depositing store receipts in a safe and timely manner *is* an essential function of an assistant manager's job, *see* 29 C.F.R. § 1630.2(n) (explaining method of determination as to whether a function is essential); *see also Stone,* 118 F.3d at 97 (discussing 29 C.F.R. § 1630.2(n)). The plaintiff does not argue

otherwise. The question, then, is whether, as a matter of law, the plaintiff was incapable of performing *that* function with a reasonable accommodation.

NOCO neither asserts nor presents evidence to support an argument that the only way to satisfy the need for an assistant manager to deposit cash in the bank is for that assistant manager to drive herself to the bank. The plaintiff suggested several "plausible accommodation[s]" to enable her to be promoted at S–44, including having the manager of a nearby store drive her or hiring a car service or a driver at her own expense. The proposed accommodations are not, facially, an "undue hardship," 42 U.S.C. § 12112(b)(5)(A), which in any event is an affirmative defense, and would allow the plaintiff to accomplish the task of depositing the store's receipts in the bank.[5] We therefore conclude that a rational jury could find that the plaintiff was able to perform the essential functions of the assistant manager position at S–44 with a reasonable accommodation.

■ Further, we hold that a jury could reasonably find that NOCO did not reasonably accommodate the plaintiff's disability. NOCO asserts that by giving the plaintiff an assistant manager's job at an armored car store, it provided the plaintiff with *a* reasonable accommodation and that it therefore fulfilled its obligations under the ADA. The district court thought so too. It held that the plaintiff was not entitled to an accommodation to enable her to work specifically at S–44, a position that she sought "because the store was located in close proximity to her home, not because it accommodated her disability." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* No. 97–

---

5. We note that NOCO does not take the position, as it might if driving were an essential function of the position sought, that working at a store with armored car service, where assistant managers do not drive to the bank, is the *only* possible reasonable accommodation of the plaintiff's disability.

CV–72C(M), slip op. at 11 (W.D.N.Y. July 5, 2000).

■■ We disagree that offering the desired position at an armored car store was, as a matter of law, a reasonable accommodation. By requiring reasonable accommodation, "Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons." *Wernick v. Fed. Reserve Bank,* 91 F.3d 379, 384 (2d Cir. 1996). In that pursuit, the ADA defines a qualified individual with a disability as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds *or desires.*" 42 U.S.C. § 12111(8) (emphasis added); *see also Jackan v. New York State Dep't of Labor,* 205 F.3d 562, 565–66 (2d Cir.2000) (quoting § 12111(8) and emphasizing the words *"or desires"*). And it is discriminatory and a violation of the ADA to fail to "mak[e] reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is an applicant" for an employment position.

■■ The ADA does not specify whether "position" means only the level of job desired or the level of job desired at a particular location (and perhaps also on a particular shift). We think the answer depends on what the evidence in each case shows as to the job opportunities for those without disabilities, since a person with a disability must have an opportunity equal to theirs. If an employer offers its workforce an opportunity for promotion to a higher level of employment without honoring any requests for a particular location (or shift), then an ADA plaintiff cannot complain of assignment to a less favorable location. But if the employer permits its workers to apply for promotion at a preferred location (or shift), then a disabled person must have the same opportunity.

In this case, the evidence thus far developed indicates that NOCO employees could apply for promotion at a particular store. A contrary conclusion could not be reached as a matter of law on this record. If employees could apply for promotion to assistant manager at stores of their choice, the plaintiff had the right to seek the assistant manager job at the store she desired—S 44—free from discrimination.

In making the determination whether NOCO failed to accommodate the plaintiff's disability, the *reason* for her desire for that particular job—personal convenience or otherwise—does not matter. She was entitled to a reasonable accommodation, if one was available, to permit her to compete with nondisabled applicants on an equal basis to become assistant manager at the store of her choice. A rational jury could find on the basis of the evidence adduced that such a reasonable accommodation was available but not offered to her.

Finally, there is more than enough evidence to support a jury finding that NOCO flatly refused to afford the plaintiff the reasonable accommodation to which she was entitled. The January 5, 1994 letter from NOCO's director of personnel, its president's letter of January 26, 1994, and evidence of the plaintiff's subsequent efforts to become assistant manager at S–44, recited above, would suffice. And NOCO's offer of a position at S–40 obviously does not constitute an accommodation of the plaintiff's disability that would enable her to obtain the position she wanted at S–44.

■ We also note that "[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan,* 205 F.3d at 566 (citing *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996); 29 C.F.R. § 1630.2(*o*)(3)). NOCO provides no evidence that it took any steps toward engaging in an interac-

tive process, such as "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 162 (3d Cir.1999). NOCO's president's response to the plaintiff's request for an accommodation, that NOCO "will not be entertaining further communication on this matter," was the antithesis of participation in an interactive process. Because we find sufficient evidence of an outright refusal to accommodate to preclude summary judgment on this claim, we need not decide whether the refusal of NOCO to enter into an "interactive process" alone would foreclose summary judgment. *See Cravens v. Blue Cross and Blue Shield*, 214 F.3d 1011, 1021 (8th Cir.2000) (citing *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 952 (8th Cir.1999)).

In like vein, the plaintiff, and the EEOC as *amicus curiae*, urge us to hold, as have other circuit courts of appeals, that the defendant had not only a duty reasonably to accommodate the plaintiff's disability, but an independent duty to institute and engage in an "interactive process" with the plaintiff to attempt to find a reasonable accommodation the breach of which is it-self a violation of the ADA. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111–17 (9th Cir.2000) (in banc) (collecting cases); *id.* at 1117 (holding that in light of the defendant's "failure to engage in the interactive process, liability would be appropriate if a reasonable accommodation would otherwise have been possible"). The plaintiff did not raise this argument in the district court, and the court therefore did not consider it. We therefore decline to consider it on appeal. Inasmuch as we reverse the grant of the defendant's motion for summary judgment on the claim of failure to promote with a reasonable accommodation in any event, there is no possible injustice, let alone "manifest injustice," to justify our departure from the "general rule ... that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 108 (2d Cir.2000) (quoting *Singleton*; other citations omitted).

▮▮▮▮ *2. NOCO's affirmative defenses.* NOCO asserts two affirmative defenses. First, it posits that the plaintiff is not a qualified individual because she poses "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b); *see also Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir.1999). The district court rejected this defense, but the defendant urges us to accept it on appeal.[6] The ADA defines

---

**6.** The district court not only refused to grant the defendant summary judgment based on this defense, but also granted the plaintiff's cross-motion for partial summary judgment on the issue of whether she was a qualified individual. NOCO cross-appeals that decision. But a grant of partial summary judgment is an interlocutory order that is, by itself, ordinarily not appealable. *See, e.g., La-Trieste Rest. & Cabaret v. Vill. of Port Chester,* 96 F.3d 598, 599 (2d Cir.1996) (*per curiam* ) (citing *United States v. 228 Acres of Land & Dwelling,* 916 F.2d 808, 811 (2d Cir.1990),

*cert. denied sub. nom. Moreno v. U.S. Drug Enforcement Admin.,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991)). Although the partial summary judgment merged into the final judgment dismissing the case, *see West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 781 (2d Cir.1999), today we vacate summary judgment in the defendant's favor and remand the case to the district court for further proceedings. Thus, the partial summary judgment "reverts to its original interlocutory status and we lack jurisdiction" to address this order on appeal. *Id.* The court's ruling

"direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). Expanding on the "direct threat" language, the EEOC has stated that it "means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). The EEOC guidelines further provide that:

> An employer ... is not permitted to deny an employment opportunity to an individual with a disability merely because of a slightly increased risk. The risk can only be considered when it poses a significant risk, i.e. high probability, of substantial harm; a speculative or remote risk is insufficient.

*Hamlin v. Charter Township of Flint*, 165 F.3d 426, 432 (6th Cir.1999) (quoting 29 C.F.R. § 1630.2(r)). The legislative history of the ADA also supports the premise that "[t]he plaintiff is not required to prove that he or she poses no risk." H.R.Rep. No. 101–485, pt. 3, at 46 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 469.

■■■ To protect disabled individuals from discrimination "based on prejudice, stereotypes, or unfounded fear," *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), "an individualized assessment of the [employee's] present ability to safely perform the essential functions of the job based on medical or other objective evidence" is re-

quired, *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 569, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (citing 29 C.F.R. § 1630.2(r) and *Bragdon v. Abbott*, 524 U.S. 624, 649, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (citing *Arline*, 480 U.S. at 288, 107 S.Ct. 1123)). "To determine whether an individual poses a direct threat, we must consider factors including: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that potential harm will occur; and (4) the imminence of potential harm." *Emerson v. N. States Power Co.*, 256 F.3d 506, 513–14 (7th Cir.2001) (citing *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1291 (10th Cir.2000)).

NOCO has failed to provide any evidence that the plaintiff poses a significant risk of substantial harm. The plaintiff's seizures usually last a few minutes or less. The only injury she sustained during her employment with the company was the minor one to her elbow in April 1994. NOCO has not identified any time at which she failed to perform her duties or caused harm to others because of her affliction or otherwise. Until this litigation, NOCO had never exhibited a concern about her ability to perform her job as a sales clerk or as an assistant manager because of such a risk.

The plaintiff's neurologist also concluded that the plaintiff did not pose a threat to herself or others and that the NOCO job was appropriate for her. The physician NOCO asked to review the plaintiff's con-

---

that the plaintiff is a qualified individual with a disability can only be appealed after a final judgment is entered thereafter. *See Armstrong v. McAlpin*, 699 F.2d 79, 94 (2d Cir. 1983). The cross-appeal will therefore be dismissed.

While we do not rule on the basis of the cross-appeal that the plaintiff is a qualified individual with a disability as a matter of law, we do consider it as a potential alternative ground for affirmance of the district court's grant of

summary judgment. *See United States v. Raines*, 362 U.S. 17, 27 n. 7, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Sims v. Mulcahy*, 902 F.2d 524, 545 (7th Cir.1990); 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3904, at 195 (2d ed.1992). The defendant's cross-appeal was thus unnecessary to bring the issue of the plaintiff's status as a qualified individual with a disability before us.

dition suggested only that the plaintiff be examined "by a qualified neurologist for medical evaluation[ ] and treatment" and that "she not perform job duties [that] involve[ ] work at heights above ground level, operate heavy machinery or work in isolated areas where she would be alone for significant periods of time." He said nothing to indicate that she posed a significant risk of harm to herself or others in performing her duties. We decline to affirm the district court's grant of summary judgment for the defendant on the ground that the plaintiff was not a qualified individual with a disability.

■■ Second, NOCO asserts, as an alternative defense, undue hardship. To establish this defense, NOCO must show "(a) that making a reasonable accommodation would cause it hardship, and (b) that the hardship would be undue." *Stone*, 118 F.3d at 97; *see also* 42 U.S.C. § 12112(b)(5)(A). NOCO has not made a showing that would permit the district court to decide in its favor on this issue as a matter of law.

The ADA defines undue hardship as "an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B)." 42 U.S.C. § 12111(10)(A). The "factors in subparagraph (B)" include the cost of the accommodation, the overall financial resources of the employer, and the type of operation of the employer. *See id.* § 12111(10)(B). We have recognized that undue hardship "is a relational term; as such, it looks not merely to the costs that the employer is asked to assume, but also the benefits to others that will result." *Stone*, 118 F.3d at 98 (internal quotation marks omitted). NOCO has provided no evidence that the accommodations suggested by the plaintiff would create an undue hardship. Indeed, in light of the plaintiff's suggestion that she pay for her own transportation to the bank, it would seem an uphill battle for NOCO to establish that an accommodation would necessarily create any hardship at all.

Because the plaintiff has come forward with sufficient evidence to establish a prima facie case of failure to promote to assistant manager with a reasonable accommodation and because NOCO has failed to establish as a matter of law that the reasonable accommodations suggested by the plaintiff would cause it undue hardship, the district court erred in granting summary judgment to NOCO on this aspect of her claim.

**B.** *Promotion to Assistant Manager Without a Reasonable Accommodation*

■ Although the plaintiff's primary basis for claiming discrimination for failure to promote to assistant manager is that she could perform the position with a reasonable accommodation, she also appears to be alleging that she could do so without an accommodation. In order to succeed on this theory, the plaintiff must show (1) that she is a qualified individual with a disability within the meaning of the ADA, (2) that NOCO had notice of her disability, (3) that without an accommodation to her disability, she was qualified for the position of assistant manager at S–44, and (4) that NOCO nonetheless declined to promote her because of her inability to drive which in turn it knew resulted from her disability. *Cf. Stone v. City of Mt. Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997).

■ We have already held in connection with the plaintiff's claim as to the failure to promote her *with* an accommodation that on the record to date, a reasonable jury could find in her favor on parts (1), (2) and (4) of this standard. As to part (3), NOCO denied the plaintiff the promotion to assistant manager at S–44 because she was unable to drive. If the district court were required to conclude as

a matter of law that possession of a valid driver's license, although not an essential function of the job, is a qualification for the position of assistant manager at S–44, the court would have rightly granted NOCO's summary judgment motion as to her claim for promotion to assistant manager without an accommodation.

We hold, to the contrary, that the plaintiff adduced enough evidence to create a genuine issue of material fact on this issue. While one of the plaintiff's supervisors testified at his deposition that NOCO policy stated that a person making the deposit was required to be alone, NOCO failed to produce any such policy in writing. Another supervisor testified that having one person, the manager or assistant manager, make all deposits alone was a safety concern but stated that the concern is not reflected in any written document. The official job description provided by NOCO states only that managers and assistant managers must "prepare bank deposit tickets and make bank deposits daily." Nowhere in the three-page job description does it say that managers and assistant managers must possess a valid driver's license; nor does it specify the method by which daily bank deposits must be made. We think that a jury could reasonably find that possessing a driver's license is not a qualification to be a NOCO assistant manager.

Finally, we note that an affirmative defense that the plaintiff is not a qualified individual with a disability because she poses "a direct threat to the health of safety of other individuals in the workplace," 42 U.S.C. § 12113(b), would be available on this claim if the facts supported it. As we held with respect to her failure to promote with an accommodation claim, see section I.A.2., supra, however, NOCO has not begun to establish that it is entitled to the benefit of that defense as a matter of law.

Although we question the need for the plaintiff to pursue her claim of failure to promote without an accommodation in light of the viability of her easier-to-establish claim of failure to promote with an accommodation, we hold that summary judgment should not have been granted against her on this claim either.

## II. Claim of Failure to Promote to Manager

■ Summary judgment was properly granted to the defendant, however, on the failure to promote claim as to the position of store manager at S–40, when she was working there as an assistant manager. The plaintiff has not established that she was denied the position; she resigned before receiving any notice of denial and presents no direct evidence that she was to be rejected for the promotion. And because the promotion would have been in a store with armored car service, a denial, had it occurred, would not have been because she did not have a driver's license. The plaintiff provides no other evidence that this "refusal" to promote was based on her disability. The district court did not err in granting summary judgment on this claim.

## III. Retaliation Claim

Finally, the plaintiff claims that NOCO threatened and intimidated her for asking for an accommodation and for raising questions under the ADA, and retaliated against her for filing charges under the ADA. The ADA makes it unlawful for an employer "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by this chapter." 42 U.S.C. § 12203(b). The ADA further renders it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or

because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The plaintiff asserts that NOCO violated both of these sections of the ADA by threatening her with legal action when she demanded accommodation and by suspending her without pay after she filed a charge with the EEOC. The district court dismissed her claims based on its findings that NOCO's letter to the plaintiff was not threatening and that she suffered no damages because of the suspension.

■ On January 20, 1994, the plaintiff wrote the letter to NOCO in which, *inter alia*, she cited the ADA and set forth her understanding of its requirements, suggesting several possibilities for accommodating her disability. In response to this letter, on January 26, 1994, NOCO's president wrote the short, sharp letter of rebuke quoted above. A jury could reasonably find that the letter's statement that "[i]f she continue[d] this behavior, [NOCO would] have no choice but to address [her] behavior through legal channels," and that that was NOCO's "final position on this matter and it [would] not be entertaining further communication on th[e] matter" served to "intimidate" or "threaten" her in the assertion of her right to make complaints or file charges under the ADA.

■■ The plaintiff further asserts that NOCO retaliated against her in violation of § 12203(a) by suspending her without pay after she filed her "charge of discrimination" with the EEOC. We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases. *See Muller v. Costello,* 187 F.3d 298, 311 (2d Cir.1999).

In order to defeat a motion for summary judgment addressed to a claim of retaliation . . ., the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected participation or opposition under [the ADA], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

*Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001) (internal quotation marks omitted) (Title VII case).

■■ The plaintiff has come forward with sufficient evidence to establish a prima facie case of retaliation. Her filing of a complaint with the EEOC is an activity protected by the ADA. *See Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999). The EEOC provided NOCO with notice of the complaint. A jury could conclude that shortly thereafter the plaintiff was suspended without pay for a week. Even if the jury agrees with NOCO that the plaintiff was later reimbursed, suspension without pay is sufficient to constitute an adverse employment action in this context. We have defined adverse employment action broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999). We have also noted that lesser actions may be considered adverse employment actions, citing as examples "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." *Id.* And we have held that adverse employment actions are not limited to "pecuniary emoluments." *Preda v.*

*Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2d Cir.1997) (citation and internal quotation marks omitted). The plaintiff was suspended for a week without pay. Thus, she lost wages. While a NOCO official testified that the plaintiff was reimbursed for her lost wages, the official admitted that the reimbursement occurred "some time later." The plaintiff thus may have at least suffered the loss of the use of her wages for a time. This would be sufficient to support a jury's finding that she suffered an adverse employment action.

 The plaintiff has also presented sufficient facts to show a causal connection between her protected activity and the adverse employment action. "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra*, 252 F.3d at 216 (internal quotation marks omitted). We "ha[ve] not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship...." *Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001). Although the plaintiff filed her complaint with the EEOC on February 4, 1994, the complaint was not served on NOCO until the beginning of April 1994. She was suspended later that month. This time span is short enough to permit a jury to infer a causal connection. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446–47 (2d Cir.1999) (holding that abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998) (holding discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing a complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation).

NOCO asserts that the plaintiff was removed from the schedule to enable her to be evaluated by a doctor. The fact that the removal was without pay, that it occurred months or years after her condition was first known to NOCO, and the testimony of a supervisory employee who did not recall anyone else being suspended without pay, could properly convince a jury that NOCO's proffered legitimate reason for her suspension was a pretext for impermissible retaliation.

Thus, the district court erred in dismissing the plaintiff's § 12203 claims based on the letter and suspension.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. The cross-appeal is dismissed.