**TRANSFLO TERMINAL SERVICES, INC., Plaintiff,**

v.

**BROOKLYN RESOURCE RECOVERY, INC., Defendant.**

14–CV–5167 (WFK) (RML)

United States District Court, E.D. New York.

Signed March 31, 2017

Paul D. Keenan, Eric C. Palombo, Keenan Cohen & Merrick, P.C., Ardmore, PA, John W. Hoefling, Kelly, Rode & Kelly, Mineloa, NY, for Plaintiff.

Anthony Joseph Genovesi, Abrams, Fensterman, Fensterman, et al., Lake Success, NY, for Defendant.

## DECISION & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

Transflo Terminal Services ("Plaintiff" or "Transflo") brings this action against Brooklyn Resource Recovery, Inc. ("Defendant" or "BRR") setting forth claims for failure to pay transloading charges and breach of contract. Plaintiff alleges Defendant failed to pay freight charges Defendant owed pursuant to contract, and now moves for summary judgment. For the reasons discussed below, Plaintiff's motion is GRANTED.

## BACKGROUND

Defendant is a corporation that, as part of its business operations, generates Automobile Shredder Residue ("ASR") and ships it "to landfills via rail and motor-carriers." Def.'s Counterstatement of Facts ("Def.'s Facts") ¶ 3, ECF No. 24-1. Plaintiff, a wholly owned subsidiary of CSX Transportation, Inc. ("CSXT"), Pl.'s Resp. Def.'s Counterstatement Facts ("Pl.'s Resp.") ¶¶ 4-5, ECF No. 25-1, "operates terminals throughout the country that receive loaded railcars" and "transfers the contents of those railcars to motor-carriers/tractor-trailers for delivery to final destination," Def.'s Facts ¶ 2. Plaintiff particularly specializes in "transloading," which is the process of "unloading cargo from one form of transportation and loading the cargo onto another form of transportation." Pl.'s Resp. ¶ 6. Between 2006 and 2012, Plaintiff provided "transloading, trucking and disposal services to BRR." Def.'s Facts ¶¶ 6, 14-18. Specifically, CSTX transported ASR from Defendant's principal place of business in Brooklyn, New York, to Plaintiff's transloading terminal in Toledo, Ohio. Pl.'s Statement of Facts ¶¶ 3, 11, ECF No. 23-2. Upon receipt, Plaintiff transferred the ASR to a trailer and transported it by motor-carrier to an approved landfill, which, during the relevant time period, was Carleton Farms Landfill in New Boston, Michigan. Id. ¶¶ 11, 14.

The instant dispute arose out of Defendant's failure to pay for certain of Plaintiff's services. Plaintiff filed a Complaint on September 17, 2015, which it subsequently amended on September 15, 2015, setting forth failure-to-pay and breach-of-contract claims premised on the same facts. Am. Compl. ¶¶ 11-13, ECF No. 18. Specifically, Plaintiff asserts it had an agreement with Defendant "to provide transloading services for BRR's freight," which Defendant violated by declining to pay invoices for services rendered from June 2011 to March 2012. Id. ¶¶ 5-8. Plaintiff seeks $99,532.02—the amount of the unpaid transloading fees[1]—plus prejudgment interests, costs, finance charges, and attorneys' fees. Id. at 3-4. On April 1, 2016, Plaintiff moved for summary judgment. See ECF Nos. 23-25. The Court now addresses Plaintiff's motion.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by citation to materials in the record, including depositions, affidavits, declarations, and electronically stored information. Fed. R. Civ. P. 56(a)–(c). Affidavits and declarations, whether supporting or opposing a summary judgment motion, "must be made on personal

---

1. This amount is undisputed. Def.'s Facts ¶ 19.

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*; *see also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

■ "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to answer "the threshold inquiry of whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must therefore review whether the record could "lead a rational trier of fact to find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

■ If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F.Supp.2d 161 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348). "The mere existence of a scintilla of evidence" in support of the non-movant will be insufficient to defeat a summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Rather, the non-moving party must make a showing sufficient to establish the exis-

tence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## DISCUSSION

■ Plaintiff moves for summary judgment on both of its claims—failure-to-pay and breach-of-contract—against Defendant. According to Plaintiff, summary judgment is warranted because the facts indisputably establish breach of the parties' enforceable contract, which did not allow Defendant to withhold payments without having first disputed an invoice in writing within fifteen days of receiving it.[2] *See generally* Pl.'s Mem. in Supp. of Mot. Summ. J. ("MSJ"), ECF No. 23–1; Pl's Reply, ECF No. 25. Defendant advances a different interpretation of the parties' agreement, in which Plaintiff was not entitled to payment for services rendered unless it provided Defendant with Manifests, which are forms that can be taken as proof the ASR was deposited in a landfill. Def.'s Mem. Opp'n ("Opp'n") at 7–10, ECF No. 24. Plaintiff counters Defendant presented "no affirmative evidence that Transflo ever agreed to provide Manifests as a condition precedent to payment." MSJ at 11. This Court can grant summary judgment without deciding whether Plaintiff was required to furnish the Manifests, however, because it is undisputed that Plaintiff gave the Manifests to Defendant anyway. *See*

---

**2.** Defendant does not contend it submitted any such disputes, but rather argues those

were not "the terms of the parties' agreement." Def.'s Facts ¶ 22.

Def.'s Facts ¶ 48 (acknowledging receipt of Manifests but disputing their authenticity).

Endeavoring to avoid the implications of Plaintiff's production, Defendant argues the Manifests are "clearly fabricated" for two reasons: they (1) were signed by people who were not employees of BRR, CSXT, or Transflo; and (2) represent that ASRs were transported from Brooklyn, New York, to Transflo's facility in Toledo, Ohio, and delivered at Carleton Farms Landfill in New Boston, Michigan, in just one day, which Defendant asserts is physically impossible. Opp'n at 5; *see also* Rosselli Decl. ¶ 19, ECF No. 24–3 (asserting Manifests "are identifiable on their face as having been fabricated"). Each of these assertions is wholly without support in the record, and no rational factfinder could conclude that either is correct.

In support of its first argument, Defendant asserts individuals who were not employees of either party or CSXT "routinely signed [the 'Generator Information' sections of the Manifests] as if they were" employed by one of those entities. Opp'n at 5. Defendant is correct that Manifests were not signed by employees of either party or CSXT. *See generally* ECF No. 24–12 (producing copies of Manifests Plaintiff provided). But the suggestion that the Manifests are fraudulent simply because they were signed by employees of entities other than the parties or CSXT is off base. This is because neither CSXT nor the parties operated the Transflo terminal that "overs[aw] receipt and transfer of shipments of railcars to tractor-trailers for transportation to a final destination"; that responsibility fell to a third party—Savage Services. Greulich Decl. ¶ 5, 13, ECF No. 23–10. Far from perpetrating acts of fraud, then, Savage Services employees were acting both appropriately and consistent with the company's business practices by certifying, via signature, that the ASR was

properly packaged, *id.* ¶ 5, and "in proper condition for transportation," ECF No. 24–12. Defendant's first thus argument fails.

Defendant next argues the Manifests must be fabricated because most "state [ ] that BRR's ASR made its entire journey from Brooklyn[,] New York to Toledo[,] Ohio to New Boston[,] Michigan in a single day" but this trip "takes between one and two weeks to complete." Opp'n at 5. This argument fares no better than the first; there is uncontested evidence that the time period listed on the Manifests refers to the time between ASR leaving Plaintiff's facility in Toledo, Ohio, and arriving at the Carleton Farms landfill in New Boston, Michigan, rather than to the ASR's entire journey. Just as Savage Services employees were responsible for filling out the "Generator Information" section of the Manifests, they were also responsible for filling out the "Transporter 1" sections. Greulich Decl. ¶ 13. When they did so, they "would enter the date the truck was loaded at the Toledo Terminal as the 'shipment date under the Generator Information' section and 'Transporter 1' section." *Id.* ¶ 14. In other words, the earliest date on any Manifest would correspond to the date ASR was placed into a truck to be transported to the landfill. That journey takes approximately 42 minutes. ECF No. 25–3 (mapping route from Plaintiff's facility to Carleton Farms). The single-day time period is therefore not an indication the Manifests were fabricated, and Defendant's second argument fails.

In sum, by providing Manifests that are patently legitimate, Plaintiff has demonstrated it fulfilled all of the terms of its contract with Defendant, and Defendant has failed to counter this showing with any proof of fraud. Nor did Defendant advance an alternative rationale for declining to pay its invoices. Defendant's failure to tender payment therefore constitutes a

breach of contract. The Court deems summary judgment appropriate, and orders Defendant to remit $99,532.02 for outstanding transloading charges along with prejudgment interests, costs, finance charges, and attorneys' fees.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment and to close the action.

**SO ORDERED**

**J.H., Plaintiffs,**